[No. 55875–2. En Banc. March 22, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID
MOTHERWELL, ET AL, *Appellants.*

*Ellis & Li,* by *Steven T. McFarland, Michael E. Ritchie,* and *Daniel J. Ichinaga,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Katherine Flack* and *Philip Jans, Deputies,* for respondent.

DURHAM, J.—Three religious counselors were convicted of violating former RCW 26.44.030(1), a statute requiring certain job holders to report incidents of suspected child abuse to governmental authorities. On appeal, all three counselors argue that requiring them to report information they learned in religious counseling sessions violates the establishment and free exercise clauses of the federal and state constitutions. Defendants Motherwell and Mensonides also contend that former RCW 26.44 ("reporting statute") is unconstitutionally overbroad and vague. We reject the constitutional arguments and affirm these convictions. Hartley, an ordained minister, argues an exemption for clergy should be implied into the statute. Because we hold that the statute does exempt clergy when they are counseling in their role as clergy, Hartley's conviction is reversed.

I

FACTS

Community Chapel is an evangelical Christian church located in the Seattle area. One of its primary purposes is to provide spiritual counseling to its membership. The counseling is all encompassing, including topics such as problems with marriage, family, interpersonal relationships, and finances. The ultimate goal of each counseling session, however, is "developing and enhancing [counselees'] personal relationships with Jesus Christ".

David Motherwell, E. Scott Hartley and Louis Mensonides are all employed as paid religious counselors at the Community Chapel. In the course of their counseling, each of the three was told about separate incidents of child abuse. A woman told Hartley that her husband had sexually abused her daughter. Hartley discussed the allegations with both her husband and her daughter and attempted to reconcile the family. A second woman told Mensonides that her husband had beaten their two sons, ages 4 and 7, and Mensonides discussed this further with the older son. A third woman told Motherwell that her husband was sexually abusing their 8–year–old daughter and was acting violently toward the entire family. The three counselors did not report these incidents of suspected child abuse to the authorities within the 48–hour period required by the reporting statute.

All three counselors were charged with violating the reporting statute. The defendants joined in a pretrial motion seeking dismissal of the charges. They argued that the reporting statute contains an implied exemption for clergy members, that the statute was unconstitutionally vague and overbroad, and that its application would violate their First Amendment rights. The motion was denied.

The defendants were tried separately, and each was convicted of failing to report the suspected abuse. Each

defendant received a deferred sentence coupled with 1 year's probation, and each was ordered to complete a professional education program concerning the ramifications of sexual abuse. In addition, Motherwell was ordered to pay a $500 fine.

All three defendants appealed their convictions to the Court of Appeals, where their cases were consolidated. We accepted certification from the Court of Appeals.

## II
### APPLICATION OF THE REPORTING STATUTE

The reporting statute reads in relevant part as follows:

When any practitioner, professional school personnel, registered or licensed nurse, social worker, psychologist, pharmacist, or employee of the department [of Social and Health Services] has reasonable cause to believe that a child or adult dependent person has suffered abuse or neglect, he shall report such incident, or cause a report to be made, to the proper law enforcement agency or to the department as provided in RCW 26.44.040. The report shall be made at the first opportunity, but in no case longer than forty–eight hours after there is reasonable cause to believe that the child or adult has suffered abuse or neglect.

Former RCW 26.44.030(1).[1] Violation of these standards constitutes a gross misdemeanor. Former RCW 26.44.080.

As the statute makes clear, social workers are one of the groups required to report when they suspect that child abuse has occurred. The Legislature defined the term "social worker" in this context as:

anyone engaged in a professional capacity during the regular course of employment in encouraging or promoting the health, welfare, support or education of children, or providing social services to adults or families, whether in an individual capacity, or as an employee or agent of any public or private organization or institution.

Former RCW 26.44.020(8).

---

[1]Because the reporting statute has been amended since the dates when the offenses occurred here, our reference in this opinion will be to the former statute.

In each of the trials conducted below, the finder of fact determined that the defendant met this statutory definition.[2] The defendants have not disputed the sufficiency of the evidence supporting this determination.[3] They also have not challenged the findings that they had reasonable cause to believe that child abuse had occurred and that they failed to report this information in a timely manner to the proper authorities. Accordingly, all the elements of the crime set out in former RCW 26.44.030(1) are satisfied in this case.

Defendant Hartley asks that we imply into the reporting statute an exemption for members of the clergy. All three of the defendants raised the issue of statutory exemption in their pretrial motion. However, during oral argument, counsel for the defendants conceded that Motherwell and Mensonides were not ordained ministers when they first learned of the suspected child abuse. Consequently, the resolution of this issue does not affect their convictions.

In support of his argument for an implied exemption, Hartley points out that prior to 1975 the statute expressly included the clergy among those groups that were

---

[2]This finding takes different forms in each case. The judge in Motherwell's case entered a formal finding of fact that he was acting as a social worker. A jury found Hartley guilty of violating the reporting statute, a verdict that it could reach under its instructions only if it found that Hartley was a social worker. And finally, the judge hearing Mensonides' case stated in his oral opinion that the statute applied because Mensonides was acting as a social worker. Mensonides argues that his case should be remanded because no formal finding of fact was entered on this point. We disagree. No remand is necessary where, as here, ambiguous written findings of fact are supplemented by the trial court's oral opinion. *See In re LaBelle,* 107 Wn.2d 196, 219, 728 P.2d 138 (1986); *State v. Holland,* 98 Wn.2d 507, 518, 656 P.2d 1056 (1983).

[3]Although Motherwell assigns error to the trial court's finding that he was *acting as a social worker,* he has not presented any argument or authority as to why the finding was erroneous. Therefore, we consider the assignment of error abandoned. *Valley View Indus. Park v. Redmond,* 107 Wn.2d 621, 630, 733 P.2d 182 (1987). Similarly abandoned are the defendants' assignments of error to the conclusion that Motherwell was guilty of violating the reporting statute and the finding that Mensonides was aware of his duty to report child abuse to the authorities.

required to report suspected child abuse. However, in 1975 the Legislature amended the statute by deleting the reference to clergy members. Thus, he contends, the Legislature's act reveals a clear intent to exempt all clergy members from the statute's mandatory reporting provision.[4] We agree that the deletion of "clergy" from the reporting statute would seem to relieve clerics from the reporting mandate. Logically, clergy would not have been removed from the reporting class if the Legislature still intended to include them.

Announcing a rule that requires clergy to report under all circumstances could serve to dissuade parishioners from acknowledging in consultation with their ministers the existence of abuse and seeking a solution to it. Merely concluding that the *mandatory* reporting requirement does not apply in this instance does not of itself prevent *voluntary* reporting of suspected or actual abuse to secular authorities.[5]

While we agree that the Legislature intended to exempt clergy from the reporting statute, we do not believe that the exemption sweeps as broadly as Hartley suggests. Simply establishing one's status as "clergy" is not enough to trigger the exemption in all circumstances. One must also be functioning *in that capacity* for the exemption to apply.

Former RCW 26.44.020(11) defines "clergy" as follows:

> "Clergy" shall mean any regularly licensed or ordained minister, priest or rabbi of any church or religious denomination,

---

[4]The defendants also argue that the Legislature, by providing independent definitions of "clergy" and "social workers", intended for the two groups to be nonoverlapping, so that a member of the clergy could never be considered a social worker. *See* former RCW 26.44.020(8); former RCW 26.44.020(11). This argument, however, is not convincing; that each term is separately defined does not necessarily imply that their meanings were intended to be mutually exclusive.

[5]Former RCW 26.44.030(2) provides: "Any other person [not subject to the mandatory reporting requirement of subsection (1)] who has reasonable cause to believe that a child or adult dependent or developmentally disabled person has suffered abuse or neglect *may* report such incident to the proper law enforcement agency or to the department of social and health services as provided in RCW 26.44.040." (Italics ours.)

whether acting in an individual capacity or as an employee or agent of any public or private organization or institution.

The statute neither defines nor describes the activities of "clergy". Status as a member of the clergy is conferred by license or ordination within one's church or religious denomination. Thus, we hold as a matter of statutory interpretation that members of the clergy counseling their parishioners in the religious context are not subject to the reporting requirement under former RCW 26.44.030. Because defendants Motherwell and Mensonides were not ordained ministers when they first learned of the suspected child abuse, they do not fall within the exemption. Their convictions are affirmed. Because he was an ordained minister at all relevant times, Hartley does fall within the exemption. His conviction is reversed.

Although Motherwell and Mensonides were not ordained ministers, they were acting as religious counselors. In that capacity, they raise a number of constitutional issues. We turn now to those issues.

## III
### FREE EXERCISE CLAUSE

■ The first amendment to the United States Constitution states that "Congress shall make no law . . . prohibiting the free exercise" of religion. Through the operation of the Fourteenth Amendment, this free exercise clause applies equally to state governments. *Cantwell v. Connecticut,* 310 U.S. 296, 303, 84 L. Ed. 1213, 60 S. Ct. 900, 128 A.L.R. 1352 (1940).

Analysis of free exercise claims consists of two separate inquiries. A claimant first must make a prima facie case showing that his free exercise rights have been infringed. If the requisite showing is made, then the burden of proof shifts to the state to justify the infringement.

The trial court concluded that the reporting statute did not violate the free exercise clause. The court found that although the defendants had established their prima facie

case of infringement, the State satisfied its counterburden because the State's interest in protecting the welfare of children was compelling and the State used the least obtrusive means of implementing that interest.

## A. The Burden of Showing Infringement

■ A free exercise claimant must show "'the coercive effect of the enactment as it operates against him in the practice of his religion.'" *Witters v. Commission for the Blind,* 112 Wn.2d 363, 371, 771 P.2d 1119 (1989) (*Witters II*) (quoting *School Dist. v. Schempp,* 374 U.S. 203, 223, 10 L. Ed. 2d 844, 83 S. Ct. 1560 (1963)). In this regard, "'[t]he challenged state action must somehow compel or pressure the individual to violate a tenet of his religious belief.'" *Witters II,* at 371 (quoting *Witters v. Commission for the Blind,* 102 Wn.2d 624, 631, 689 P.2d 53 (1984) (*Witters I*), *rev'd on other grounds sub nom. Witters v. Washington Dep't of Servs. for the Blind,* 474 U.S. 481, 88 L. Ed. 2d 846, 106 S. Ct. 748, *reh'g denied,* 475 U.S. 1091 (1986)). Moreover, a claimant must show that his religious convictions are sincerely held. *See Backlund v. Board of Comm'rs of King Cy. Hosp. Dist. 2,* 106 Wn.2d 632, 639–40, 724 P.2d 981 (1986), *appeal dismissed,* 481 U.S. 1034 (1987).[6]

In explaining their religious beliefs, the counselors assert that "the State is requiring compliance with a compulsory reporting regulation which would coerce [them] to forsake sincerely held religious tenets and practice as ministers and

---

[6]There is some uncertainty in the law regarding whether free exercise claimants must also prove that the tenet allegedly infringed is central to their religious beliefs. For example, in *Backlund,* this court at one point stated that a free exercise claimant must show centrality, but later found that the claimant had satisfied his burden of proof solely on the basis of sincerity. *Backlund,* 106 Wn.2d at 639–40. The Supreme Court has in some cases discussed the centrality of a claimant's religious tenets, but it has never expressly required claimants to establish centrality. See discussion in L. Tribe, *American Constitutional Law* 1247 (2d ed. 1988). Because this issue is not necessary to the resolution of the present case, however, we decline to address it. *See Johnson v. Morris,* 87 Wn.2d 922, 931, 557 P.2d 1299 (1976); *see generally* 16 Am. Jur. 2d *Constitutional Law* § 160 n.65 (1979).

church counselors." Brief of Appellants, at 38. They state their tenets and practices in the following manner:

[The church counselors] sincerely believe that as ministers of the Gospel of Jesus Christ, they are "called" to serve and "shepherd" members of their congregation. Their spiritual counseling and care are based on the Bible, require prayer, and focus on a parishioner's problems in a private setting with the goals of repentance, healing and reconciliation.

Imposition of mandatory 48–hour reporting would undermine the trust between minister and present and future counselees. By applying the statute to ministers, the State requires that within 48 hours after a parishioner confidentially confesses sins or makes statements that suggest child abuse might have occurred, the minister, under threat of prosecution, would be required to breach the confidences and replace spiritual counseling with a police investigation. Under the statute as applied to defendants and other clergy, the minister is no longer a confidant, but a witness for the State; not an instrument of spiritual guidance, but a conscripted arm of the police.

(Citations omitted.) Brief of Appellants, at 39–40.

In this regard, it is important to note that the counselors are not contending that their religion requires them to keep confidential all information learned in a counseling session. Rather, as was made more clear during oral argument, the counselors state that their practice is to first tend to their parishioners' problems through prayer and counseling, and to inform the secular authorities only in those cases where their religious procedures prove ineffective.

With these statements, however, the counselors have not satisfied their burden of proof. Even if we assume that these statements amount to tenets of their religion,[7] and even if we concede that they are sincerely held, the counselors have not shown that the government coerced them into violating any such tenets. Requiring church counselors to report suspected child abuse does not prevent them from counseling their parishioners. Counseling can continue even

---

[7]Even though the courts have often given great deference to claimants' expressions of the tenets of their religion, see, e.g., United States v. Lee, 455 U.S. 252, 257, 71 L. Ed. 2d 127, 102 S. Ct. 1051 (1982), we are reluctant to accept all such statements at face value.

after a report is made.[8] The gist of the counselors' contentions seems to be that a reporting requirement will impair their ability to counsel their parishioners, a position that avails them little under free exercise analysis. Both this court and the Supreme Court have clearly stated that free exercise claimants do not meet their burden of proof merely by showing that the government's actions have impeded their ability to practice their religion. In *Witters* II, a claimant under the free exercise clause sought to force a state agency to give him financial assistance that he would use to attend a private Bible college. We held that:

> In the present case, the Commission's denial of vocational aid to the [applicant] did not compel or pressure him to violate his religious beliefs. [Applicant] chose to become a minister, and the Commission's only action was to refuse to pay for his theological education. *The Commission's decision may make it financially difficult, or even impossible, for [applicant] to become a minister, but this is beyond the scope of the free exercise clause.*

(Italics ours.) *Witters* II, 112 Wn.2d at 372 (quoting *Witters* I, 102 Wn.2d at 631).

The Supreme Court has similarly held that the key question is not whether a religious practice is inhibited, but whether religious tenets can still be observed. In *Bob Jones Univ. v. United States,* 461 U.S. 574, 76 L. Ed. 2d 157, 103 S. Ct. 2017 (1983), the Court stated that the "[d]enial of tax benefits will inevitably have a substantial impact on the operation of private religious schools, but will not prevent those schools from observing their religious tenets." 461 U.S. at 603–04.

The Supreme Court made this same point even more explicitly in *Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 99 L. Ed. 2d 534, 108 S. Ct. 1319 (1988), where the Court stated that claimants are not coerced into violating their religious beliefs merely because

---

[8]We note that our conclusion might be different if the counselors' religious tenets required them to keep confidential all information learned in counseling sessions, because requiring a report in these circumstances could coerce a direct violation of religious tenets.

the governmental act will impede, or even "virtually destroy", their ability to practice their religion. 485 U.S. at 449–51. The Court expressly refused to analyze free exercise issues on the basis of the effect on religious practices, stating that it would be put in the untenable position of weighing "the value of every religious belief and practice that is said to be threatened by any government program", when the value of any particular belief cannot be measured by one not holding that belief. 485 U.S. at 457. Moreover, the Court stated that the language of the free exercise clause itself—"Congress shall make no law . . . *prohibiting* the free exercise [of religion]"—requires more than a simple showing of impaired practices. 485 U.S. at 456. In light of these precedents, we conclude that our analysis is not to include any detrimental effect that the reporting statute might have on the defendants' ability to counsel their parishioners.

We hold that the defendants have not sustained their burden of proving an infringement of their First Amendment rights.

### B. The State's Burden of Justification

Moreover, even if the defendants had satisfied their burden of proof, they would not prevail in this case since the State has sufficiently met its countervailing burden of justifying the mandatory reporting requirements for religious counselors. "Not all burdens on religion are unconstitutional." *United States v. Lee,* 455 U.S. 252, 257, 71 L. Ed. 2d 127, 102 S. Ct. 1051 (1982), *quoted in Texas Monthly, Inc. v. Bullock,* 489 U.S. 1, 103 L. Ed. 2d 1, 109 S. Ct. 890, 902 (1989); *Backlund v. Board of Comm'rs of King Cy. Hosp. Dist. 2,* 106 Wn.2d 632, 640–41, 724 P.2d 981 (1986), *appeal dismissed,* 481 U.S. 1034 (1987). Even if free exercise claimants establish an infringement of their rights, the governmental action will be upheld if the State presents sufficient justification for that infringement.

The State's burden of proof requires it to show that "a compelling governmental interest justifies the regulation

in question". *Backlund,* at 641; *see Thomas v. Review Bd.,* 450 U.S. 707, 718, 67 L. Ed. 2d 624, 101 S. Ct. 1425 (1981); *Hobbie v. Unemployment Appeals Comm'n,* 480 U.S. 136, 140–41, 94 L. Ed. 2d 190, 107 S. Ct. 1046 (1987).[9] The State must also show that "the regulation is the least restrictive imposition on the *practice* of [the claimant's] belief to satisfy that interest." *Backlund,* at 641; *see Thomas,* 450 U.S. at 718. Nevertheless, the State need not accommodate the claimant's belief if doing so would "unduly interfere with fulfillment of the governmental interest." *Lee,* 455 U.S. at 259.

█ Here, the State's interest in the protection of children is unquestionably of the utmost importance. The Supreme Court has long recognized the significance of this interest in upholding state regulations concerning children's welfare over the free exercise objections of others. *See Prince v. Massachusetts,* 321 U.S. 158, 88 L. Ed. 645, 64 S. Ct. 438 (1944) (the State's interest underlying child labor laws); *Jehovah's Witnesses v. King Cy. Hosp.,* 390 U.S. 598, 20 L. Ed. 2d 158, 88 S. Ct. 1260 (1968) (the State's interest in providing minor children with blood transfusions over parents' free exercise objection), *aff'g* 278 F. Supp. 488 (W.D. Wash. 1967). Washington courts have similarly accorded great weight to this interest. *See State v. Meacham,* 93 Wn.2d 735, 740–41, 612 P.2d 795 (1980) (the State's interest in protecting children's welfare by requiring individuals to establish paternity through blood testing). As we stated in *Meacham,* "[t]hat the State has a compelling interest in [safeguarding children] cannot be gainsaid." *Meacham,* at 741. Because the State cannot combat the

---

[9]The Supreme Court has not been consistent in its phrasing of this requirement, sometimes stating that the government need show only an "overriding" interest. *See Lee,* at 257–58; *Texas Monthly, Inc. v. Bullock,* 489 U.S. 1, 103 L. Ed. 2d 1, 109 S. Ct. 890, 902 (1989). Although the terms "overriding interest" and "compelling interest" could conceivably be interpreted differently, the Supreme Court has not indicated that any such difference is intended. *See Bob Jones Univ. v. United States,* 461 U.S. 574, 603–04, 76 L. Ed. 2d 157, 103 S. Ct. 2017 (1983) (using the terms interchangeably).

evils of child abuse without some means of bringing such abuse to light, we conclude that the mandatory reporting requirement of former RCW 26.44.030(1) is justified by a compelling state interest.

Additionally, the State uses the least restrictive means with which to satisfy its interest in protecting children from abuse. The State is not requiring individuals to take any steps to prevent the abuse, but is only requiring them to report to the authorities. Given that the duty is only one of reporting, it is not clear how this could be accomplished in a less inhibitory manner to religious interests while still allowing the State to satisfy its interests. The only suggestion made by the counselors is that the State could exempt all religious officials from the reporting requirement. Requiring the State to do so, however, would unduly interfere with the fulfillment of its own interest. In *Lee,* the Supreme Court concluded that exempting religious claimants from having to pay taxes would unduly interfere with the government's interest, reasoning that "[b]ecause the broad public interest in maintaining a sound tax system is of such a high order, religious belief in conflict with the payment of taxes affords no basis for resisting the tax". *Lee,* 455 U.S. at 260. Similarly, any restriction on the scope of reporting duties beyond that determined to be necessary by the Legislature constitutes undue interference when the State's goal is as important as the protection of children from physical and sexual abuse. We conclude that the State has used the least restrictive means that would not unduly interfere with the pursuit of its compelling interest.

■ For these reasons, we hold that application of the mandatory reporting statute to religious counselors does not offend the free exercise clause of the First Amendment.

## IV
### ESTABLISHMENT CLAUSE

The First Amendment provides in part that "Congress shall make no law respecting an establishment of religion". This establishment clause, like the free exercise clause,

applies equally to state legislatures. *Cantwell v. Connecticut*, 310 U.S. 296, 303, 84 L. Ed. 1213, 60 S. Ct. 900, 128 A.L.R. 1352 (1940).

■ The Supreme Court has developed a 3-part test for determining the constitutionality of a statute under the establishment clause: "the statute must have a secular legislative purpose"; "its principal or primary effect must be one that neither advances nor inhibits religion"; and "the statute must not foster 'an excessive governmental entanglement with religion.'" *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 29 L. Ed. 2d 745, 91 S. Ct. 2105 (1971) (quoting *Walz v. Tax Comm'n*, 397 U.S. 664, 674, 25 L. Ed. 2d 697, 90 S. Ct. 1409 (1970)).

The first two parts of the *Lemon* test pose no problem here. The reporting statute's legislative purpose is to "safeguard the general welfare" of children, *see* former RCW 26.44.010, an undeniably secular purpose. The statute's primary effect, moreover, is undoubtedly the same as its purpose. Any effect on religion is secondary at best.

As to the third *Lemon* consideration, the counselors argue that the State becomes impermissibly entangled with a counselor's religious affairs when the courts decide which of his acts are religious in nature and which constitute "social work". The counselors contend that in determining these matters the State "interjects itself as arbiter of doctrinal matters", thereby entangling itself with the church. Brief of Appellants, at 49. In support, they point to a recent United States Supreme Court case stating that "determining whether an activity is religious or secular requires a searching case–by–case analysis. This results in considerable ongoing government entanglement in religious affairs." *Corporation of Presiding Bishop v. Amos*, 483 U.S. 327, 343, 97 L. Ed. 2d 273, 107 S. Ct. 2862 (1987) (Brennan, J., concurring).

■ The defendants' argument incorrectly assumes that "social work" refers only to secular activities. The statute contains no such limitation. Under the statutory definition of "social worker", a person engages in social work if he

provides social services to adults or families, regardless of whether the services are religiously or secularly motivated. Former RCW 26.44.020(8) (quoted above). Therefore, in determining whether a church official is a social worker as defined by the reporting statute, courts are not called on to distinguish religious and secular activities. Because the religious nature of a person's acts is not a factor in determining if the statute applies or if free exercise rights are violated, the defendants' argument is without merit.

The only other argument raised by the defendants is that the State will become impermissibly entangled in religious affairs if it is called on to determine whether any particular tenet is central to a system of religious beliefs. Because the issue of centrality is not necessary to the determination of this case, we decline to address its constitutional underpinnings. See footnote 6.

Application of the reporting statute to the religious counselors involved in this case does not violate the First Amendment's establishment clause.

## V
### RELIGION CLAUSES OF THE STATE CONSTITUTION

The defendants argue that the reporting statute also violates two sections of the Washington State Constitution addressing government and religion. Const. art. 1, § 11; Const. art. 26.

■ The defendants, however, have cited to these provisions only in passing, without providing any authority or argument as to how the provisions should be applied to the present case. It is now well established that we will consider whether to apply our state constitutional provisions more strictly than parallel federal provisions only if we are asked to do so, *State v. Yates,* 111 Wn.2d 793, 799 n.8, 765 P.2d 291 (1988), and even then only if the argument includes proper analysis of the six "interpretive principles" outlined in *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808 (1986). *State v. Worrell,* 111 Wn.2d 537, 539 n.1, 761 P.2d 56 (1988); *State v. Wethered,* 110 Wn.2d 466, 472, 755 P.2d

797 (1988). Because the counselors have not done so, we decline to reach the applicability of our state constitution.

## VI
### VAGUENESS

 Motherwell and Mensonides argue that former RCW 26.44.030(1) is unconstitutionally vague as applied to this case. The standards for determining vagueness are well established:

> An ordinance or statute is "void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *O'Day v. King Cy.,* 109 Wn.2d 796, 810, 749 P.2d 142 (1988). The vagueness doctrine serves two important purposes: to provide fair notice to citizens as to what conduct is proscribed and to protect against arbitrary enforcement of the laws. *State v. Richmond,* 102 Wn.2d 242, 243–44, 683 P.2d 1093 (1984); *State v. Hilt,* 99 Wn.2d 452, 453–54, 662 P.2d 52 (1983).

*Seattle v. Eze,* 111 Wn.2d 22, 26, 759 P.2d 366 (1988).

Of course, "impossible standards of specificity are not required", so that "'if men of ordinary intelligence can understand a penal statute, *notwithstanding some possible areas of disagreement,* it is not wanting in certainty.'" *Eze,* at 26–27 (quoting *State v. Maciolek,* 101 Wn.2d 259, 265, 676 P.2d 996 (1984)).

 The gist of the defendants' argument is that the statute is vague because ordinary citizens would not interpret the term "social worker" to include a religious counselor. Whatever may be the merits of this particular argument, it ignores entirely the fact that the Legislature has furnished a specific definition of "social worker", which reads as follows:

> "Social worker" shall mean anyone engaged in a professional capacity during the regular course of employment in encouraging or promoting the health, welfare, support or education of children, or providing social services to adults or families, whether in an individual capacity, or as an employee or agent of any public or private organization or institution.

Former RCW 26.44.020(8). A separate statutory definition such as this must be taken into account in determining whether statutory language is unconstitutionally vague. *See*

*Worrell,* at 543; *State v. Smith,* 111 Wn.2d 1, 7, 759 P.2d 372 (1988).

A person of common intelligence would understand the statutory definition of "social worker" to apply to religious counselors when they are involved in counseling that directly concerns the welfare of children, as occurred here. Moreover, the counselors apparently did more than counsel their church members, but actually participated in resolving family disputes for their members. For example, each counselor was instrumental in temporarily removing family members from the various households.[10] Finally, one of the exhibits admitted in Motherwell's trial is a memorandum from Motherwell to all counselors unequivocally stating that Washington law required them to report any information of suspected child abuse to appropriate government agencies, thereby indicating that application of the statute to counselors such as the defendants was readily evident.

Because people of common intelligence would understand the reporting statute as applying to those providing social services to adults or families, and because that is what occurred here, we reject the defendants' "as applied" vagueness challenge.

## VII
### OVERBREADTH

 "A law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities." *Seattle v. Huff,* 111 Wn.2d 923, 925, 767 P.2d 572 (1989); *see also Eze,* 111 Wn.2d at 31. Because of the important rights protected by the First Amendment, the overbreadth doctrine allows a litigant to challenge a statute on its face, rather than as applied to his own facts, and have a statute

---

[10]After a particularly violent family argument, Motherwell persuaded the husband of his counselee to leave the home for a short period of time. In order to reconcile the family he was counseling, Mensonides set certain guidelines for the husband and wife to follow, and when the husband broke one of the guidelines Mensonides asked him to leave the family home. At one point, Hartley also took steps to make sure that the husband of his counselee temporarily left the home in order to relieve tensions in the family.

invalidated for overbreadth where it would be unconstitutional as applied to others even if not as applied to him. *See generally* Note, *The First Amendment Overbreadth Doctrine,* 83 Harv. L. Rev. 844, 845 (1970). The doctrine is designed to short circuit the process by which a statute's constitutionality is addressed only on a case–by–case basis, Note, 83 Harv. L. Rev. at 845, thereby eliminating the chilling effect on legitimate First Amendment activity that would be created by leaving an unconstitutional statute on the books. *State v. Regan,* 97 Wn.2d 47, 52, 640 P.2d 725 (1982).

 Mensonides and Motherwell argue that the reporting statute is overbroad on its face because the First Amendment would be violated if the statute were applied to ordained ministers. However, they do not explain why ministers should be accorded greater protection under the religion clauses of the First Amendment than that extended to religious counselors. Indeed, our analysis of the religion clauses would be unchanged if the defendants were ordained ministers rather than counselors, because even in the free exercise area the proper emphasis is on the religious belief at issue, not on the status of the person holding that belief. Accordingly, this aspect of the defendants' contentions lacks merit.

 The defendants also argue that the reporting statute would be overbroad if applied to ministers "whose doctrine of faith *mandates* non–disclosure of confessional statements." Brief of Appellants, at 56. This argument, however, cannot be advanced unless the law is "substantially overbroad":

> The First Amendment overbreadth doctrine may invalidate a law on its face only if the law is "substantially overbroad". *Houston v. Hill,* 482 U.S. 451, 96 L. Ed. 2d 398, 410, 107 S. Ct. 2502, 2508 (1987) (citing *New York v. Ferber,* 458 U.S. 747, 769, 73 L. Ed. 2d 1113, 102 S. Ct. 3348 (1982)). In determining overbreadth, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." (Citations omitted.) *Hill,* 107 S. Ct. at 2508. Criminal statutes require particular scrutiny and may be facially invalid if they "make unlawful a substantial amount of

constitutionally protected conduct . . . even if they also have legitimate application." *Hill,* 107 S. Ct. at 2508.

*Huff,* at 925.

Statistics gathered by the American Humane Association indicate that in 1984 less than 2 percent of all child abuse reports came from religious personnel. *See* American Ass'n for Protecting Children, Inc., The American Humane Ass'n, *Highlights of Official Child Neglect and Abuse Reporting 1984,* at 2 (1986), *cited in* Cole, *Religious Confidentiality and the Reporting of Child Abuse: A Statutory and Constitutional Analysis,* 21 Colum. J.L. & Soc. Probs. 1, 44–45 (1987). Moreover, because not every religious faith mandates that all communications be kept confidential, the scenario drawn by the defendants will occur even less frequently than the statistic just cited. We conclude, therefore, that the statute does not reach a substantial amount of constitutionally protected activity.

Finding no constitutional error, we affirm the convictions of Motherwell and Mensonides. Because of our holding that members of the clergy, acting as such, are not subject to the reporting requirement under former RCW 26.44.030, we reverse Hartley's conviction.

CALLOW, C.J., UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, and SMITH, JJ., and PEARSON, J. Pro Tem., concur.