Megan WILSON, Appellant,

v.

Kimary H. DARR, Charles Kottas, Sacred Heart Church of Valley Junction, Ellen Taylor, and Catholic Social Services, Appellees,

and

Thomas Wilson and Joseph M. Veverka, Defendants.

No. 95–78.

Supreme Court of Iowa.

Sept. 18, 1996.

Stacey N. Bell and R.J. Hudson of Smith, Schneider, Stiles, Hudson, Serangeli, Mallaney, Shindler & Scalise, P.C., Des Moines, for appellant.

David L. Charles of Belin Harris Lamson McCormick, P.C., Des Moines, for appellees.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

CARTER, Justice.

Plaintiff, Megan Wilson, challenges an order granting summary judgment for certain defendants in the action. These defendants and the claims made against them are as follows:

1. Defendant Father Charles Kottas is a Catholic parish priest and a teacher at Sacred Heart School in Valley Junction. Plaintiff claims that he failed to report physical and sexual abuse perpetrated upon her by her father.

2. Defendant Kimary Darr is a guidance counselor employed by Sacred Heart School. Plaintiff claims that Darr failed to report physical and sexual abuse perpetrated upon plaintiff by her father.

3. Defendant Ellen Taylor is a licensed counselor employed by Catholic Social Services. Plaintiff claims that Taylor failed to report physical and sexual abuse perpetrated upon plaintiff by her father and otherwise performed counseling functions in a negligent manner.

4. Defendant Sacred Heart Church of Valley Junction is the operator of Sacred Heart School and the employer of Father Kottas and Kimary Darr. Plaintiff claims that Sacred Heart Church is vicariously liable for the acts or omissions of Kottas and Darr and directly liable for its own negligence in failing to adequately train Kottas and Darr, or establish procedures for reporting child abuse.

5. Defendant Catholic Social Services is an unincorporated association in Des Moines that employed Ellen Taylor as a licensed counselor. Plaintiff claims that Catholic Social Services is vicariously liable for the acts or omissions of Taylor and directly liable for its own negligence in failing to adequately train Taylor, or establish procedures for reporting child abuse.

After reviewing the record and considering the arguments of the parties, we affirm the judgments of the district court with respect to the claims against each of these five defendants.

This case arises out of physical and sexual abuse allegedly perpetrated upon plaintiff by her father. He is also a defendant in the case, but not involved with the issues contained in this appeal. Plaintiff's family were members of Sacred Heart Church of Valley Junction from 1987 to 1989. Father Kottas was the associate pastor of that church from 1987 to 1989. Plaintiff and her parents met with him in late April and early May of 1988 for family counseling. Father Kottas holds a Masters Degree in Human Development but is not a licensed counselor. Plaintiff, in her

deposition and the affidavits that were used as part of the summary judgment record, stated that she did not tell Father Kottas that her father had sexually abused her but did tell him that he had "hurt" her. She expressed the view that the counseling with Father Kottas focused too strongly on efforts to reunite the family unit rather than on efforts to alleviate the emotional problems that plaintiff was suffering as a result of past child abuse.

Plaintiff completed the seventh and eighth grades at Sacred Heart School during the 1986–87 and 1987–88 school years. Kimary Darr was a counselor employed by the school at this time. Plaintiff met with Darr for one-half hour each week while attending Sacred Heart School. During the 1988–89 school year, at which time plaintiff was attending Dowling High School, she met with Darr every other week for approximately forty-five minutes. The physical and sexual abuse of plaintiff by her father stopped in December of 1988 when he moved from the family home. Darr maintains that she did not know of the physical or sexual abuse perpetrated upon plaintiff by her father until plaintiff told her of the abuse in the spring of 1989. Plaintiff could not recall telling Darr about the abuse prior to the latter date.

Plaintiff and her family met with Ellen Taylor, a licensed counselor employed by Catholic Social Services, on several occasions between January of 1989 and March of 1989. During some of these sessions, everyone in the family was present, including plaintiff's father. At other sessions, Taylor talked only with the plaintiff or only with the parents. Plaintiff attempted suicide in late February of 1989. In her deposition and affidavits, plaintiff contends that the counseling sessions with Taylor were focused too strongly on efforts to reunite the family unit rather than efforts to alleviate plaintiff's emotional harm as a result of past child abuse.

In early April of 1989, plaintiff began counseling with Mindy Levine, a licensed social worker employed by Iowa Methodist Medical Center in Des Moines. Levine's area of expertise included the detection of children who have suffered sexual abuse based on all available indicia. In Levine's affidavit, filed in opposition to the motions for summary judgment, she indicated that during the time she counseled plaintiff the symptoms of an abused child were obvious. She further stated that the desirability of preserving the family unit was outweighed by the need to deal directly with the emotional problems of an abused child. Additional facts relevant to deciding this appeal will be discussed in connection with the legal issues presented.

## I. *Review of Summary Judgment Rulings.*

We review rulings granting summary judgment for errors at law. To obtain a grant of summary judgment on some issue in an action, the moving party must affirmatively establish the existence of undisputed facts entitling that party to a particular result under controlling law. *Griglione v. Martin,* 525 N.W.2d 810, 813 (Iowa 1994); *Goodwin v. City of Bloomfield,* 203 N.W.2d 582, 588 (Iowa 1973). To affirmatively establish uncontroverted facts that are legally controlling as to the outcome of the case, the moving party may rely on admissions in the pleadings, *see Fisher Controls Int'l v. Marrone,* 524 N.W.2d 148, 149 (Iowa 1994), affidavits or depositions, answers to interrogatories, and admissions on file. Iowa R. Civ. P. 237(c).

In addition, the moving party may establish a right to summary judgment by establishing the limits of the other parties' proof. If those limits reveal that the resisting party has no evidence to factually support an outcome determinative element of that party's claim, the moving party will prevail on summary judgment. *Griglione,* 525 N.W.2d at 813–14. We apply these principles in considering plaintiff's arguments on this appeal.

## II. *The Claim Against Father Kottas.*

Plaintiff's argument of this claim is based on the contention that Father Kottas failed to report to proper authorities a child abuse situation involving plaintiff and her father. There is no claim that Father Kottas had been made aware of any sexual abuse involving those persons. Plaintiff urges,

however, that Father Kottas should have been aware of past physical abuse based on her statement to him that her father had hurt her. The district court did not decide this issue on the extent of Father Kottas's knowledge but, rather, dismissed the claim against him on the basis he had no duty to report child abuse even if he suspected it.

The record presented on the summary judgment motion reflects that Father Kottas met with the Wilson family on several occasions for purposes of assisting them in their familial relationship. It appears, however, that his role in these discussions was that of a clergyman counseling the family to work out their differences in accordance with the teachings of the church. We agree with the conclusions of the district court that this involvement in the Wilsons' familial conflicts did not render him a mandatory reporter of suspected child abuse under the requirements of Iowa Code section 232.69 (1989). To the extent that subpart (1) of that statute makes a "counselor" a mandatory reporter of child abuse, this is limited to a reasonable belief actually formed by the counselor "in the scope of professional practice." Father Kottas's professional practice, as it related to the Wilson family, was that of clergyman. In *State v. Motherwell*, 114 Wash.2d 353, 788 P.2d 1066 (1990), the court held that members of the clergy counseling their parishioners in the religious context were not mandatory reporters under that state's statute.

The legislature did not include members of the clergy among those that are required to report child abuse under section 232.69. Because it is common knowledge that clergymen engage in activities within a religious context that might unearth abusive situations, that omission must be deemed to have been a conscious choice to exclude this profession from the reporting requirements of the statute.

The district court was correct in concluding that Father Kottas had no statutory duty to report child abuse visited upon plaintiff. Plaintiff does not suggest that he had a common-law duty to report such matters. Consequently, the district court's grant of summary judgment in favor of Father Kottas will not be disturbed.

### III. *The Claim Against Kimary Darr.*

■ Plaintiff's claim against Kimary Darr involves counseling that she received from Darr both prior to and after the alleged physical and sexual abuse had terminated. In the motion papers, Darr, who was a mandatory child abuse reporter under section 232.69, denies any knowledge of physical or sexual abuse being perpetrated upon plaintiff prior to the time the alleged abuse had terminated. Darr sought to establish the limits of plaintiff's proof through discovery. Plaintiff did not remember informing Darr of the alleged child abuse prior to the spring of 1989, at which time her father had been removed from the family. In seeking to show a genuine issue of material fact on Darr's alleged failure to report, plaintiff relies on Mindy Levine's affidavit stating that plaintiff bore obvious symptoms of an abused child when Levine counseled her in April 1989. We agree with the district court that this statement does not raise a jury issue concerning whether Darr knew or should have known that plaintiff had been a victim of child abuse in 1987 and 1988.

■ Plaintiff also suggests, again based on statements in the Levine affidavit, that Darr's failure to report the child abuse that was related to her in the spring of 1989 might have aggravated plaintiff's emotional injuries by delaying plaintiff in receiving professional counseling. That claim, however, was not plaintiff's theory of recovery in the district court. Her allegations were only that because of Darr's failure to report "the abuse of plaintiff continued resulting in damages." The district court was not required to identify and consider plaintiff's enlarged theory of recovery being urged on appeal when it had not been raised. Summary judgment in favor of Darr was properly granted.

### IV. *The Claim Against Ellen Taylor.*

Plaintiff's claims against Ellen Taylor are two-fold: first, that she failed to perform her statutory duty as a mandatory reporter of child abuse, and second, that she was guilty of professional negligence in counseling plaintiff.

■ The record is clear that Taylor did not learn of the alleged child abuse until after it had ceased. Thus, the reasons for granting summary judgment in favor of Taylor on the claimed failure to report child abuse are the same as those that we have upheld in affirming the claim against Kimary Darr. We reach the same result concerning the claim against Taylor.

■ With respect to the claim of professional negligence against Taylor, the district court granted summary judgment based on the state of the record concerning expert testimony. The only expert witness identified by plaintiff concerning the issue of Taylor's professional negligence was Mindy Levine. Examination of Levine's deposition and affidavit reveals that she was not able to state Taylor's counseling of plaintiff fell below a required level of professional competence in any particular. Taylor successfully established the limited extent of plaintiff's expert testimony through discovery. Based on this state of the record the district court properly granted summary judgment on the professional negligence claim. *See Cox v. Jones,* 470 N.W.2d 23, 25–26 (Iowa 1991); *Thomas v. Fellows,* 456 N.W.2d 170, 171 (Iowa 1990); *Donovan v. State,* 445 N.W.2d 763, 766 (Iowa 1989).

## V. *The Claims Against Sacred Heart Church and Catholic Social Services.*

■ Plaintiff's claims against Sacred Heart Church and Catholic Social Services are based on (1) respondeat superior involving the acts of Kottas, Darr, and Taylor; and (2) the alleged failures of these entities as the employers of Kottas, Darr, and Taylor to (a) establish procedures for reporting child abuse, and (b) properly train their employees in the detection of child abuse. The respondeat superior claims against these two defendants fail for the same reasons that the claims against Kottas, Darr, and Taylor failed.

■ With respect to the claims alleging failure to provide adequate training to Kottas, Darr, and Taylor and failure to provide adequate procedures for the reporting of child abuse, we must consider both the statutory and common-law bases for such claims. With respect to a statutory basis, all entities that employ mandatory reporters must provide those employees with two hours of training in child abuse detection and reporting within six months of initial employment and an additional two hours of training every five years. Iowa Code § 232.69(3). The record reflects that Darr and Taylor had received that training. Father Kottas was not a mandatory reporter and thus his employer would not be subject to this statute.

Plaintiff's common-law contentions are embraced by the Restatement principle stated below:

> A person conducting an activity through servants or other agents is subject to liability from harm resulting from his conduct if he is negligent or reckless:
>
> (a) in giving improper or ambiguous orders or in failing to make proper regulations; or
>
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others; or
>
> (c) in the supervision of the activity; or
>
> (d) in permitting, or failing to prevent, negligent or tortious conduct by persons, whether or not they are servants or agents, upon premises or within instrumentalities under his control.

Restatement (Second) of Agency § 213 (1958). This Restatement rule is accompanied by the following comment:

> Liability results under the rules stated in this Section not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment. The employer is subject to liability only for such harm as is within the risk. If, therefore, the risk exists because of the quality of the employee, there is liability only to the extent that the harm is caused by the quality of the employee which the employer had reason to suppose would be likely to cause harm.

*Id.* cmt. d. We adopt this as a proper standard for civil claims based on a failure to train employees.

When Father Kottas, Kimary Darr, and Ellen Taylor were selected by their respective employers, they were each college trained and professionally licensed in their respective fields. There is nothing in the record, as limited by discovery, that would permit a finding that defendants antecedently had reason to believe that these individuals were not properly trained in the requirements of their professional undertakings or, in particular, that there was any risk associated with the manner in which they would perceive situations involving child abuse. There is thus no liability on defendants' part for a failure to train these persons or to adopt special procedures dealing with the unperceived risk.

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**