74 P.3d 140 (2003)
118 Wash.App. 22
NORTH PACIFIC UNION CONFERENCE ASSOCIATION OF THE SEVENTH-DAY ADVENTISTS, Respondent,
v.
CLARK COUNTY, Washington, a municipal corporation of the State of Washington, Appellant.
No. 28364-6-II.
Court of Appeals of Washington, Division 2.
August 12, 2003.
*142 Christopher Horne, Clark Cnty Pros Atty Ofc, Vancouver, WA, for Appellant.
Richard T. Howsley and James Denver Howsley, Lane Powell Spears Lubersky LLP, Portland, OR, for Respondent.
*141 ARMSTRONG, J.
North Pacific Union Conference (Seventh Day Adventist Church) applied for a permit to build a 40,000 square-foot church administrative office building in Clark County's agricultural district. Churches are allowed in the agricultural area, but office buildings are not. Although the plans showed a 2,400 square-foot sanctuary, the hearing examiner denied the application, finding that the building was intended primarily for use as an office building rather than a place of worship. The trial court reversed the hearing examiner's conclusions and the County now appeals. We find no error in the hearing examiner's statutory interpretation of a place of worship or in his conclusion that the building is not intended primarily as a place of worship. Accordingly, we reverse the trial court and reinstate the hearing examiner's decision.

FACTS
North Pacific Union Conference (the Church) proposed to build a five-state regional headquarters office in agriculturally zoned land in Clark County. The permit application referred to the three-floor structure as an administrative center of approximately 40,000 square feet. The structure also contains a 2,400 square-foot sanctuary or worship room accommodating 120 people; only building employees would use the room on a regular basis.
The Church's local conference consists of about 3,300 members in Oregon and southwestern Washington. The Church contains approximately 80,000 members in its union conference, which consists of the states of Washington, Oregon, Idaho, Montana, and Alaska. The proposed church headquarters would be used to enlarge, perpetuate, and strengthen the Seventh-Day Adventist Church on a local as well as a global level. The proposed location was highly visible and would be convenient for office staff.
*143 The Church's representatives testified that: (1) a sanctuary can account for less than 25 percent of a church's square footage; (2) administrative functions account for a majority of a church's time; (3) churches consider physical fitness activity, book selling, youth outreach, potluck dinners, child and adult education, counseling, working with foreign governments and regulatory agencies, and church administration as religious activity; (4) the proposed structure was not a business office; and (5) the proposed location would make it easier for church members to get together.
In addition, the Church submitted: (1) transportation calculations based solely on employee trips, (2) a description of the proposed structure as the "North Pacific Headquarters Seventh Day Adventist Church," and (3) a statement in its application that it was proposing to build a "church office building for the Seventh Day Adventist church." Certified Record of Exhibits (CRE) at 717-18.
The hearing examiner denied the Church's conditional use permit after finding that the proposed facility did not meet the County's definition of a church. The hearing examiner specifically found: (1) the building's sanctuary accounted for only 2,400 square feet of the structure's 40,000 square feet; (2) the majority of the structure would accommodate executive and administrative office space, including four tax offices, five treasury offices, and four trust offices; (3) the structure looks and functions like an office building; and (4) the proposed facility was not intended to serve local parishioners.
The Clark County Board of Commissioners upheld the hearing examiner on appeal. But the Clark County Superior Court reversed the hearing examiner, finding that the examiner erred in reasoning that "because a building looks like an office rather than a church, then it must be an office." Clerk's Papers (CP) at 149. The court concluded that "[r]eligious worship can take many forms. Buildings may have sanctuaries, administrative office [sic] and other like facilities." CP at 150. The County appeals.

ANALYSIS
Under Washington's Land Use Petition Act (LUPA), the party seeking relief from an administrative decision bears the burden of proving error. RCW 36.70C.130(1); Wellington River Hollow, LLC v. King County, 113 Wash.App. 574, 579-80, 54 P.3d 213 (2002). When considering administrative decisions on appeal, we review the hearing examiner's findings of fact and conclusions of law, not the trial court's findings and decision. United Dev. Corp. v. City of Mill Creek, 106 Wash.App. 681, 687, 26 P.3d 943 (2001). We review factual findings under the substantial evidence standard and conclusions of law de novo. United Dev. Corp., 106 Wash.App. at 687-88, 26 P.3d 943.
In its appeal to the trial court, the Church cited four grounds under RCW 36.70C.130(1): (1) the hearing examiner erroneously interpreted the law, (2) the evidence did not support the decision, (3) the examiner erred in applying the law to the facts, and (4) the decision violates the Church's constitutional rights.
Grounds (1) and (4) are legal questions, which we review de novo. Friends of the Law v. King County, 123 Wash.2d 518, 523, 869 P.2d 1056 (1994). Ground (2) is a challenge to the sufficiency of the evidence. But the Church does not argue sufficiency and we, therefore, decline to address it. United Dev. Corp., 106 Wash.App. at 688, 26 P.3d 943 (unchallenged findings are verities on appeal). Ground (3) requires us to reverse only if the Church can show that the examiner's decision is "clearly erroneous." RCW 36.70C.130(1)(d); Polygon Corp. v. City of Seattle, 90 Wash.2d 59, 69, 578 P.2d 1309 (1978) (a decision is clearly erroneous only when the court is left with the definite and firm conviction that a mistake has been committed).
The Church essentially argues that the hearing officer too narrowly interpreted a place of worship to be only a traditional church with a local congregation. Instead, the Church maintains that worship must be broadly defined to include missionary work, education, charitable giving, communication, *144 publication, and planning and growth activities because these are "a vital part of the Church's worship program." Br. of Respondent at 15-16. Related to this is the Church's argument that the examiner misapplied the law to the facts. The Church criticizes the hearing examiner's reasoning that the building was not a place of worship because of the physical characteristics of the building itself. Thus, according to the Church, the hearing examiner erred by comparing the number of "tax, treasury, trust or paralegal/legal offices" to the amount of space dedicated to the sanctuary. Br. of Respondent at 21. The Church characterizes this as a "quantum of use test." Br. of Respondent at 21.
The Clark County Zoning Code prohibits any land use not "specifically enumerated or interpreted as allowable in that district." CCC 18.104.620. The building site here is zoned agricultural. The Code allows church construction on agricultural land subject to certain conditions. CCC 18.302.030. The Code defines a church as "a permanently located building primarily used for religious worship." CCC 18.104.150. The Code also states, "`Accessory use' or `structure' shall mean one which is subordinate to the principal use of a building on the lot serving a purpose customarily incidental to the use of the principal building." CCC 18.104.025. An office building is prohibited in agriculturally zoned land. CCC 18.302.020.
The Clark County Code does not define "religious worship." Because of this, the parties agree that the hearing officer could use the dictionary to ascertain the common meaning of these undefined terms. Garrison v. State Nursing Bd., 87 Wash.2d 195, 196, 550 P.2d 7 (1976). One dictionary defines "worship" as "the reverence or veneration tendered a divine being or supernatural power," or "an act, process, or instance of expressing such veneration by performing or taking part in religious exercises or ritual," or "respect, admiration, or devotion," for an "object of esteem." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2637 (1969).

I. Statutory Interpretation
In concluding that the proposed structure would be used primarily as an office, rather than as a place of worship, the hearing examiner considered: (1) the structure's physical appearance as compared with 11 other churches presented by the Church; (2) the structure's sanctuary accounted for only 2,400 square feet of the building's 40,000 square feet; (3) the Church intended to serve a five-state region, not local parishioners or a local congregation; (4) two of the proposed structure's three floors were devoted to business and administrative work; and (5) church officials were fully aware the proposed structure did not meet the County's definition of a church because of the building's administrative nature.
The examiner's use analysis is specifically called for by the ordinance, which defines a church as "a ... building primarily used for religious worship." CCC.18.104.150 (emphasis added). The hearing examiner recognized that "religious worship" constitutes more than simple prayer, that parts of the building could fit within the definition of church, and that religious activities would occur within the building. Yet, the examiner found on balance that most of the building would consist of administrative and executive office space for employees to handle the Church's religious and financial affairs. Consistent with the dictionary definition of worship, the examiner found that a church is a place where "an act, process, or instance of expressing such veneration by performing or taking part in religious exercises or ritual" occurs. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2637 (1969). Thus, we conclude that the hearing examiner did not err in construing the County ordinance to exclude the proposed building from a church classification because its use was not intended primarily as a place of worship. Nor can we say the hearing examiner committed clear error in applying the law to the undisputed facts as to how the building would be used.
The hearing examiner also properly considered the building's exterior appearance when deciding whether its primary purpose was religious worship. See First Covenant Church of Seattle v. City of Seattle, 120 Wash.2d 203, 217, 840 P.2d 174 (1992) (where a structure's interior and exterior are both *145 freighted with religious meaning, the regulation of the church's exterior impermissibly infringes on the religious organization's right to free exercise and free speech). Furthermore, the Church submitted pictures of other church buildings for the hearing examiner to review.
Finally, we hold that the examiner did not err in rejecting the Church's proposed definition of worship to include any church activity that furthers its worship program. Such a broad worship definition would allow the Church to build a school, hospital, or retail store in the agricultural zone; each promotes in some sense the Church's worship program. And although these church activities may be entitled to First Amendment protection in certain contexts,[1] the County is not obligated to allow such broad deviations in an agriculturally zoned area.

II. Constitutional Issues
The Washington State Constitution article I, section 11 promises "freedom of conscience in all matters of religious sentiment, belief and worship." But the promise does not include the right to be free of all government regulation. See Open Door Baptist Church v. Clark County, 140 Wash.2d 143, 995 P.2d 33 (2000) (requiring church to apply for a conditional use permit was not an impermissible burden on free exercise of religion). For example, the government can require churches to comply with zoning ordinances and apply for a conditional use permit. Open Door Baptist Church, 140 Wash.2d at 170, 995 P.2d 33.
The test for whether a governmental action infringes on the right to freely exercise religious practices has three parts: (1) whether the party claiming an infringement has a sincere religious belief; (2) whether the governmental action burdens the free exercise of a religious practice; and (3) if so, whether the burden is offset by a compelling state interest. Munns v. Martin, 131 Wash.2d 192, 199-200, 930 P.2d 318 (1997). The County does not question the Church's sincere religious beliefs. It does challenge the Church's claim that denial of the building permit burdens the free exercise of its religion.
The Church contends that the zoning ordinance creates two burdens: (1) the Church is hierarchical and "[r]equiring the Church to change its hierarchy in order to satisfy the County's legally erroneous interpretation of Church is an extremely burdensome condition," and (2) the location is important for visibility and access and "there is a lack of satisfactory alternative sites in the County." Br. of Respondent at 31-32.
A person who claims that the state has violated his right to religious freedom must show "the coercive effect of the enactment as it operates against him in the practice of his religion." State v. Motherwell, 114 Wash.2d 353, 361, 788 P.2d 1066 (1990) (quoting Witters v. Comm'n for the Blind, 112 Wash.2d 363, 371, 771 P.2d 1119 (1989)). The challenged state action must somehow compel or pressure the individual to violate a tenet of his religious belief. Motherwell, 114 Wash.2d at 361, 788 P.2d 1066 (citing Witters, 112 Wash.2d at 371, 771 P.2d 1119). In evaluating land use and zoning as they apply to free exercise, we require "a very specific showing of hardship to justify exemption from land use restrictions." Open Door Baptist Church, 140 Wash.2d at 169, 995 P.2d 33 (quoting First Covenant Church v. City of Seattle, 114 Wash.2d 392, 415, 787 P.2d 1352 (1990)).
The Church's claimed burdens fall short of demonstrating a coercive effect. First, the Church does not explain how denial of the conditional use permit will alter the Church hierarchy. And we can find no reason why the hierarchy should be affected by the location of the proposed building. Second, although easy access and high visibility may be desirable, the Church again does not explain how another location with somewhat less visibility and ease of access will have a coercive effect on its religious practices. As to the availability of other satisfactory sites, the record does not support the Church's claim. Although another site may not measure *146 up to the proposed site's visibility and access, the question is whether building on another somewhat less desirable site will have a coercive effect on the Church or pressure church members to violate their religious tenets. The Church has simply not shown that it would.
For the same reasons, the Church has not shown a First Amendment violation. The government violates the free exercise provisions of the First Amendment only if its action prevents the claimant from observing its religious tenets. Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 449-51, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988); Motherwell, 114 Wash.2d at 361, 788 P.2d 1066. Thus, the question is not whether a religious practice is inhibited, but whether religious tenets can still be observed. See Bob Jones Univ. v. United States, 461 U.S. 574, 603-04, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983) (denial of tax benefits will inevitably have a substantial impact on the operation of private religious schools, but will not prevent those schools from observing their religious tenets); Lyng, 485 U.S. at 450-51, 108 S.Ct. 1319. The Church has not demonstrated that the County's action in denying a conditional use permit has or will prevent its members from observing their religious tenets.
We conclude that the County's enforcement of its zoning ordinance does not burden the Church's religious practices or prevent the Church from observing its religious tenets. Accordingly, we need not reach the question of whether a compelling government interest supports the County's action.

III. Excessive Entanglement
Lastly, the Church argues that the County's zoning code violates the constitution's establishment clause by excessively entangling the County with the Church. The Church reasons that the County's attempt to characterize church activities as office functions rather than worship entangles it in Church doctrine.
Excessive entanglement occurs when the distinction between the state and the church functions becomes blurred and such functions noticeably overlap. Malyon v. Pierce County, 131 Wash.2d 779, 811, 935 P.2d 1272 (1997). One of the driving forces behind the establishment clause was the concern of "political oppression through a union of civil and ecclesiastical control." Larkin v. Grendel's Den, Inc., 459 U.S. 116, 127 n. 10, 103 S.Ct. 505, 74 L.Ed.2d 297 (1982); Malyon, 131 Wash.2d at 811, 935 P.2d 1272.
Thus, a Massachusetts law that authorized churches to veto the state's issuance of liquor licenses unlawfully "enmesh[ed] churches in the process of government." Larkin, 459 U.S. at 127, 103 S.Ct. 505; see also Voswinkel v. City of Charlotte, 495 F.Supp. 588, 595-97 (W.D.N.C.1980) (court struck down police department's use of a Baptist minister as chaplain because: (1) the department contracted directly with the Providence Baptist Church, giving it a superior opportunity to disseminate its doctrine; (2) the department paid half of the chaplain's $20,000 salary; and (3) the position, by its terms, had to be filled by a minister, creating a per se unconstitutional religious test for public employment).
But the Church and the County are not quarreling over whether any particular church practice amounts to worship. For example, the Church does not claim that any of the tax, treasury, trust, or other administrators will be engaged in liturgy as part of their work. Rather, the Church maintains that the administrators will "function ... to promote worship activities amongst the church body." Br. of Respondent at 19 (emphasis added). The dispute between the County and the Church centers on whether the Code defines churcha building used primarily for religious worshipnot only to include direct worship activities but also to include ancillary activities that promote worship. And the hearing examiner, in adopting the more narrow definition, did not decide whether any particular church practice amounted to worship. Thus, the County did not entangle itself with the Church by enforcing its zoning code.

IV. Religious Land Use and Institutionalized Persons Act (RLUIPA)
The Church argues that the County violated the RLUIPA when it denied their permit application.
The federal RLUIPA states:

*147 No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly or institution
(A) is in furtherance of a compelling governmental interest; and
(B) is the least restrictive means of furthering that compelling governmental interest.
42 U.S.C. § 2000cc(a)(1) (Supp.2003); Freedom Baptist Church of Delaware County v. Township of Middletown, 204 F.Supp.2d 857, 860 (E.D.Pa.2002).
RLUIPA applies, in part, when a "substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2)(C) (Supp. 2003); Freedom Baptist Church of Delaware County, 204 F.Supp.2d at 861.
To show a substantial burden on the free exercise of religion, the religious adherent must prove that the government's action burdens the adherent's practice of his or her religion by preventing him or her from engaging in conduct or having a religious experience that the faith mandates. Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir.1995). Moreover, the burden must be more than an inconvenience; it must be substantial and interfere with a tenet or belief that is central to religious doctrine. Bryant, 46 F.3d at 949.
The Church argues that it is substantially burdened because it is unable to build a church in agriculturally zoned land. As we have discussed, the Church explains the burden as its loss of a highly visible and convenient location.
The Church faces the same problem under RLUIPA as it did under its free exercise claim. The Act requires the Church to demonstrate a substantial burden to its religious practices. And this requires a showing that the County's conduct interferes with a central belief of the Church's religious doctrine. The Church has not shown such an interference.
Reversed.
We concur: MORGAN, J., and HUNT, C.J.
NOTES
[1] First Amendment protection extends to "church facilities intimately associated with the church's religious mission." Munns v. Martin, 131 Wash.2d 192, 205, 930 P.2d 318 (1997).