[No. 13920–7–I. Division One. August 5, 1985.]

EVELYN J. VORIS, *Appellant,* v. THE HUMAN RIGHTS COMMISSION, *Respondent.*

284

*Paul W. Robben,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Winslow Whitman, Assistant,* for respondent.

SWANSON, J.—This is an appeal from a judgment of the King County Superior Court which upheld in part a decision of the Hearing Tribunal of the Washington State Human Rights Commission in a case involving racial discrimination by the appellant, Evelyn J. Voris, in the renting of a room in her private home.

The facts forming the basis for the discrimination complaint are not in dispute. Mrs. Voris placed an advertisement in a local newspaper which read: "Off Broadway, deluxe studio, quiet empl. adult $125 325-4717." On November 4, 1977, the complainant, one Gilbert Whitman, responded to the advertisement. Although he had the ability to pay for the room Mrs. Voris refused to rent to him because of his race.

Later that day, Mr. Whitman filed a complaint with the Washington State Human Rights Commission whose staff, on that same day, conducted a "housing test" by having several people of varying race and sex inquire into the availability of the advertised room for rent. Based on that investigation, the Commission notified Mrs. Voris of Mr. Whitman's complaint, conducted a personal interview with Mrs. Voris, and in January 1979, attempted conciliation of the matter. That having failed, the Commission instituted this action which the Tribunal did not hear until Septem-

ber 3 and 8, 1981, 3½ years after the filing of the initial complaint.

The Tribunal found that Mrs. Voris showed prospective tenants a room on the second floor of her home, that bath facilities associated with that room were on the second floor and were to be shared with other tenants on the second floor, that Mrs. Voris never indicated that the prospective tenant of the second–floor room would have access to, and could share with Mrs. Voris, the main floor facilities, and that "Mrs. Voris did not deny that she refused to enter into a real estate transaction with Mr. Whitman . . . solely on account of his being a Black male."

Mrs. Voris argued that the action should be barred by laches. However, the Tribunal found no evidence of unreasonable or inexcusable delay on the part of the Commission in its "investigation, conciliation, or preparation" of the case and no evidence of prejudice or disadvantage inuring to Mrs. Voris by the delay.

The Tribunal also found that Mrs. Voris' "conscious intent to discriminate" violated Mr. Whitman's civil rights (for which Mrs. Voris was ordered to pay Mr. Whitman $1,000) and caused Mr. Whitman emotional harm and inconvenience (for which Mrs. Voris was ordered to pay Mr. Whitman $1,000). In addition to ordering Mrs. Voris to pay Mr. Whitman these two $1,000 awards, the Tribunal, in an effort to "effectuate the purposes of the Washington State Law Against Discrimination", ordered Mrs. Voris to "post in conspicuous portions of her premises posters . . . which announce the provisions of the Washington State Law Against Discrimination with regard to housing" and to

place in any and all written advertisements for rental housing, if any are used, the statement "Equal Opportunity Housing" for one year. If oral or other methods of notifying the public of availability of rental units are utilized, [Mrs. Voris] shall give equal or comparable notice to an organization concerned with the housing of Blacks, such as the Seattle Urban League, Housing Department, for one year.

Order of Hearing Tribunal, para. 2(d).

Mrs. Voris appealed this decision to the King County Superior Court which concluded after reviewing the record that the Hearing Tribunal lacked authority to award damages for emotional harm and inconvenience and, thus, reversed the $1,000 award therefor, and lacked authority to require Mrs. Voris to notify "an organization concerned with the housing of Blacks, such as the Seattle Urban League, Housing Department" and, thus, reversed that portion of the Tribunal's order. The Superior Court affirmed all other aspects of the Tribunal's order.

Mrs. Voris then sought review by the Washington Supreme Court, and the Commission cross–appealed. The cause was thereafter transferred to this court for determination. On appeal from the "affirmed" portion of the judgment Mrs. Voris contends that: (1) the administrative hearing should be barred by laches; (2) the controlling statute is unconstitutionally vague; (3) the Tribunal's findings and conclusions are arbitrary and capricious; (4) she has a constitutionally protected right to privacy when selecting household companions which entitles her to discriminate on the basis of race; and (5) there is insufficient evidence to sustain an award of $1,000 as actual damages suffered by the claimant.

In its cross appeal from the "reversed" portion of the judgment, the Commission claims that the Tribunal has authority to (1) award damages for emotional harm and inconvenience; and (2) impose the 1–year affirmative obligation upon Mrs. Voris to notify an organization concerned with the housing of blacks should she advertise the availability of a room for rent.

## I
### VORIS APPEAL

■ A. Laches. The first issue we consider is whether the equitable doctrine of laches should bar this proceeding. Laches is an affirmative defense and those asserting it must bear the burden of proof. *Brust v. McDonald's Corp.*, 34

Wn. App. 199, 209, 660 P.2d 320 (1983). Thus, Mrs. Voris had the burden to prove that an unreasonable delay on the part of the Commission resulted in a change of conditions or position which would make it inequitable to enforce the claim. *See Lopp v. Peninsula Sch. Dist. 401,* 90 Wn.2d 754, 759–60, 585 P.2d 801 (1978); *Buell v. Bremerton,* 80 Wn.2d 518, 522, 495 P.2d 1358 (1972). Because Mrs. Voris had knowledge of the pending claim by no later than November 19, 1977, she may not now assert laches on the basis of her failure to preserve evidence. *Bernard v. Gulf Oil Co.,* 596 F.2d 1249, 1257 (5th Cir. 1979).

B. Vagueness. Mrs. Voris was charged with violating RCW 49.60.222 (1977) which provides in part:

> It is an unfair practice for any person, whether acting for himself or another, because of sex, marital status, race, creed, color or national origin:
> (1) To refuse to engage in a real estate transaction with a person; . . .
> (3) To refuse to receive or to fail to transmit a bona fide offer to engage in a real estate transaction from a person;
> (4) To refuse to negotiate for a real estate transaction with a person; . . .

The term "real estate transaction" is defined in RCW 49.60.040 (1977) to include "the sale, exchange, purchase, rental or lease of real property." Mrs. Voris claims the definition of "real estate transaction" is vague in light of city and county ordinances which exempt from their antidiscrimination provisions family residences where the owner–landlord lives therein, and in light of Declaratory Ruling 18 in which the Commission ruled that it would not enforce RCW 49.60 where persons discriminate on the basis of sex when choosing household companions, even though a rental unit is involved.[1]

---

[1]The Commission issued Declaratory Ruling 18 on July 15, 1976 in response to an inquiry by Senator H. A. Goltz regarding one of his constituents who wished to rent a room in her home, but only to a person of her own sex. The Commission concluded that such a room which is "offered for rent—the tenant paying for the use of the room and acquiring a legal right to occupy it—[comes] within the logic

■■ A statute is void for vagueness under the Fourteenth Amendment if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Myrick v. Board of Pierce Cy. Comm'rs*, 102 Wn.2d 698, 707, 677 P.2d 140, 687 P.2d 1152 (1984). "The vagueness test does not require a statute to meet impossible standards of specificity." *Chicago, M., St. P., & Pac. R.R. v. State Human Rights Comm'n*, 87 Wn.2d 802, 805, 557 P.2d 307 (1976). Measured by common practice and understanding, *see Blondheim v. State*, 84 Wn.2d 874, 878, 529 P.2d 1096 (1975), the statutory definition of "real estate transaction" is specific enough to provide fair notice as to the type of conduct which is governed and proscribed by the legislation.

Contrary to Mrs. Voris' contention, the existence of Declaratory Ruling 18 does not indicate that the statutory definition was vague. Rather, the ruling only amounts to a voluntary, self–imposed limitation of the Commission's power to enforce RCW 49.60.222.[2]

Mrs. Voris' reliance on city and county fair housing codes which exempt from their antidiscrimination provisions

---

of the 'real estate transaction' language used in the law against discrimination", and that the Law Against Discrimination contains no "exceptions to its coverage of transactions". Nevertheless, recognizing that one of society's fundamental values is the "freedom to control one's life by choosing the sex of persons with whom one lives", the Commission carved out an exception. It ruled that it would refuse to apply RCW 49.60 "to the choice of sex of persons with whom one lives, even though a rental is involved" and stated further:

> Our ruling applies to persons who share living accommodations. It does not apply to persons who live in separate units of a duplex or other multiple dwelling, or to the choice of who will occupy a room in a house where the tenant has exclusive use of the room and other living areas are not shared, such as in the case of a boarding house. By 'living areas' we mean living rooms, kitchens, bathrooms, etc., and not common hallways, storage rooms or laundry areas. Persons who share living areas are within the coverage of our ruling although they may have exclusive use of their bedrooms.

[2]Because the constitutionality of that ruling is not challenged, we need not discuss it; however, we observe that the plain language of the statute, RCW 49.60.222, contains no exceptions or exclusions.

family residences where the owner resides therein is misplaced, for they have no effect on the state statutory language; they cannot preempt state statutes. Const. art. 11, § 10 (amend. 40). Furthermore, these exemptions, like Declaratory Ruling 18, amount only to voluntary, self–imposed limitations of the City's and County's power. They do not suggest the statute is vague.

C. Privacy Right. Voris argues that her right to choose the people with whom she will share her home outweighs the State's interest in preventing discrimination.

■ A right fundamentally necessary to the security of liberty and prosperity is the right to privacy. Our judiciary has consistently recognized this, although our Constitution does not expressly reserve and guarantee that right. *E.g., Paul v. Davis,* 424 U.S. 693, 712, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976); *Roe v. Wade,* 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973). Implicit within the right to privacy is the right to govern one's personal and intimate relationships within the home. The right of privacy, however, is not absolute. *Myrick,* at 703. Where society has a compelling interest, the Legislature may reasonably regulate this right. *See State v. Meacham,* 93 Wn.2d 735, 738, 612 P.2d 795 (1980); *Belle Terre v. Boraas,* 416 U.S. 1, 7, 39 L. Ed. 2d 797, 94 S. Ct. 1536 (1974) (zoning ordinance which prohibited groups of more than two persons unrelated by blood, marriage, or adoption from occupying a home did not involve a "fundamental right," such as "any rights of privacy.").

Where one opens one's home to the public by engaging in the rental of rooms therein for monetary gain, one must be deemed to have voluntarily subordinated personal privacy rights to those state interests which can be shown to be compelling. Few state interests are more compelling than those surrounding the eradication of social disparity created by racial discrimination. Therefore, we find on balance and in light of the statute's intended purpose and limited intrusion that the statute does not unconstitutionally burden Mrs. Voris' privacy rights.

D. Arbitrary and Capricious. Mrs. Voris contends that the Tribunal acted arbitrarily and capriciously because (1) there was no evidence that Mrs. Voris operated her private home with any restrictions on her tenants' joint use of her living room, kitchen or bathroom; (2) it failed to apply Declaratory Ruling 18; and (3) it failed to consider city and county fair housing codes which exempt single–family dwellings in which the owners maintain a permanent residence. We do not agree.

 Judging whether the Commission's decision was arbitrary and capricious requires an evaluation of the evidence produced at the hearing. The scope of court review should be very narrow, however, and one who seeks to demonstrate that action is arbitrary and capricious must carry a heavy burden.

Arbitrary and capricious action has been defined as willful and unreasoning action, without consideration and in disregard of facts and circumstances. Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached.

*Pierce Cy. Sheriff v. Civil Serv. Comm'n for Sheriff's Employees,* 98 Wn.2d 690, 695, 658 P.2d 648 (1983).

First, it was neither arbitrary nor capricious for the Tribunal not to enter a finding that the Voris home was a private home with shared facilities, because such findings were not required to sustain or refute a conclusion that one had violated the antidiscrimination statute.

Second, the Tribunal's unchallenged findings indicate that the living facilities on the main floor were neither accessible to, nor shared with, tenants on the second floor. Therefore even assuming arguendo that Declaratory Ruling 18 is constitutional and should have been extended to allow racial discrimination in selecting household companions, Voris has failed to prove that she would fall within such an exception.

Third, the Tribunal also properly declined to apply city and county ordinances and codes which Voris asserts exempted her single–family residence, as these did not and

could not preempt state statutes. Const. art. 11, § 10 (amend. 40).

E. Sufficiency of the Evidence. Mrs. Voris claims there was insufficient evidence of actual damages to support an award of $1,000 for the violation of Mr. Whitman's civil rights.

■ In *Skold v. Johnson*, 29 Wn. App. 541, 552, 630 P.2d 456, *review denied*, 96 Wn.2d 1003 (1981), we stated:

> The monetary awards imposed by [the Hearing Tribunal of the Washington State Human Rights Commission] are based simply upon the loss of the right to be free from discrimination in a real property transaction. RCW 49.60.225; WAC 162–08–298(4)(n). The tribunal's imposition of the maximum allowable award [$1,000] is supported by its unchallenged finding that the Skolds' racially discriminatory practices were conscious and intentional. *See Rody v. Hollis,* 81 Wn.2d 88, 500 P.2d 97 (1972).

In our case too, it is undisputed that the racial discrimination was committed with "the conscious intent to discriminate". Therefore, the $1,000 award was not improper.

## II
### COMMISSION'S CROSS APPEAL

A. Damages for Emotional Harm and Inconvenience. As discussed above, the King County Superior Court reversed that portion of the Tribunal's decision which ordered Mrs. Voris to pay Mr. Whitman $1,000 for having caused Mr. Whitman emotional harm and inconvenience. At the time the Superior Court rendered its decision, it did not have the benefit of this court's decision in *Marine Power & Equip. Co. v. Human Rights Comm'n Hearing Tribunal,* 39 Wn. App. 609, 622, 694 P.2d 697 (1985), in which we held that the 1983 amendment to RCW 49.60.250, which authorized the Tribunal to award such damages, applied retroactively. Accordingly, in light of *Marine Power,* we reverse the Superior Court and reinstate the $1,000 award of damages for emotional harm and inconvenience.

B. Affirmative Duty To Notify. As mentioned above,

in order to "effectuate the purposes of the Washington State Law Against Discrimination", the Hearing Tribunal ordered Mrs. Voris to

> place in any and all written advertisements for rental housing, if any are used, the statement "Equal Opportunity Housing" for one year. If oral or other methods of notifying the public of availability of rental units are utilized, [Mrs. Voris] shall give equal or comparable notice to an organization concerned with the housing of Blacks, such as Seattle Urban League, Housing Department, for one year.

Order of Hearing Tribunal, para. 2(d). The Superior Court struck down this last sentence, concluding that the Hearing Tribunal lacked authority to impose this burden.

Both parties cite *Skold v. Johnson, supra* at 548, as dispositive authority on this issue. In that case, the Tribunal ordered the owners of a 24–unit apartment building to

> 8. Affirmatively solicit Black prospective tenants for all future vacancies in the Skold Apartments, until the racial composition of tenants adequately and proportionately reflects the racial composition of the community in which the Skold Apartments are located. This requirement will not be deemed to have been breached if respondents can demonstrate a nondiscriminatory reason for failure to achieve such a representative racial composition.

We concluded in that case that the first sentence of paragraph 8 exceeded the Commission's authority and, even if the Commission did not exceed its authority, this was not "clear enough to insure full compliance and fair enforcement", in that there was insufficient evidence to establish, with any specificity, the "racial composition of the community". 29 Wn. App. at 555. The same cannot be said of the obligation imposed upon Mrs. Voris.

█ Unlike the order struck down in *Skold,* Mrs. Voris has no affirmative obligation to solicit future tenants. Her only obligation is to give *notice of vacancies* to certain persons *if* she decides to rent rooms in her home. Such an obligation is reasonably designed to prevent future dis-

crimination and to eliminate the effects of prior, unfair practices. *Skold,* 29 Wn. App. at 551. The affirmative obligation imposed upon Mrs. Voris by paragraph 2(d) of the Tribunal's order is not improper. It is, therefore, reinstated.

In summary, the King County Superior Court judgment is reversed and the Tribunal's order is reinstated.

CORBETT, C.J., and PETRIE, J. Pro Tem., concur.

Review denied by Supreme Court October 4, 1985.