[No. 28118-6-I.    Division One.    June 8, 1992.]

VIRGINIA RAMM, *Appellant*, v. THE CITY OF SEATTLE,
ET AL, *Respondents*.

16

*Mitzi D. Leibst,* for appellant.

*Mark H. Sidran, City Attorney,* and *Pamela K. James* and *Bruce C. Hori, Assistants,* for respondents.

SCHOLFIELD, J. — Virginia Ramm sought a declaratory judgment against the City of Seattle that its "small animal" ordinance, Seattle Municipal Code (SMC) 23.44.048, was unconstitutional and void. Ramm also sought an injunction permanently enjoining the City from enforcing the ordinance against her. From an order denying her motion and upholding the ordinance, Ramm appeals. We affirm.

FACTS

At issue in this appeal is the constitutionality of the "small animal" ordinance, SMC 23.44.048(A), which provides that up to three small animals per single-family residential structure may be kept in single-family zones.[1] The following uncontested facts are pertinent to this appeal:

In November 1987, the City of Seattle Department of Construction and Land Use (DCLU) received a complaint

---

[1] In relevant part, SMC 23.44.048 states:

"The keeping of small animals, farm animals, domestic fowl and bees is permitted outright as an accessory use to any principal use permitted outright or to a permitted conditional use subject to the following standards:

"A. Small Animals. Up to three (3) small animals per single-family residential structure may be kept in single-family zones.

"Four (4) small animals are permitted on lots of at least twenty thousand (20,000) square feet. One (1) additional small animal is permitted for each five thousand (5,000) square feet of lot area in excess of twenty thousand (20,000) square feet."

that 16 cats were being kept at the Seattle residence of Virginia Ramm. A DCLU inspector visited the premises and found six cats in the yard outside the house. Ramm told the inspector that she was keeping 16 cats. She was subsequently issued a notice of violation directing her to remove all but three of the cats. She complied with the notice and the matter was closed.

In October 1990, the City received another complaint that more than three cats were being kept on the property. A city animal control officer visited the premises and found five adult cats in the yard outside the house. On October 10, 1990, DCLU officer James Backmon inspected the property and found three adult cats outside the house and could see two more adult cats in the living room window.

On November 30, 1990, Backmon issued a notice of violation to Ramm, directing her to remove all but three of the cats. The notice informed Ramm of her right to request a hearing for reconsideration of the notice. Ramm informed Backmon that she would be seeking a legal stay of enforcement, and the compliance date was extended to January 30, 1991.

In late December 1990, Ramm brought a complaint for declaratory judgment against the City of Seattle and DCLU. In her complaint, Ramm generally alleged that the small animal ordinance was unconstitutional because it violated substantive due process, violated her right to privacy, and was vague and overbroad.

By order dated February 26, 1991, the trial court denied Ramm's motion for declaratory judgment and ruled that SMC 23.44.048(A) was constitutional. This appeal followed.

## VAGUENESS

Ramm argues that the ordinance is unconstitutionally vague on its face and as applied. She contends that the ordinance fails to provide adequate notice of what is prohibited, as it has no stated purpose and does not define the term "small animals". She further argues that the ordinance lacks adequate standards to prevent arbitrary enforcement. She argues that the ordinance is vague as applied to her

because it is unclear whether strictly indoor animals are covered.

██ An ordinance is presumed constitutional and the party challenging the constitutionality of the law has the burden of proving it is unconstitutionally vague beyond a reasonable doubt. *Seattle v. Huff*, 111 Wn.2d 923, 928, 767 P.2d 572 (1989); *American Dog Owners Ass'n v. Yakima*, 113 Wn.2d 213, 215, 777 P.2d 1046 (1989). For the ordinance to be vague beyond a reasonable doubt, the plaintiff must show at least one of two procedural elements is missing: adequate notice to citizens or adequate standards to prevent arbitrary enforcement. *Huff*, at 929; *American Dog Owners*, at 215.

█ When the challenged ordinance does not involve First Amendment interests, it is not properly evaluated for facial vagueness but must be judged as applied. *Spokane v. Douglass*, 115 Wn.2d 171, 182, 795 P.2d 693 (1990). At oral argument, Ramm conceded that only an "as applied" challenge to the ordinance is appropriate here, as her claims do not involve First Amendment interests. Ramm further conceded that she knew that the term "small animals" as used in the ordinance included cats. Nonetheless, she claims that the ordinance is vague as applied to her because it is unclear whether the provision covers strictly indoor pets.

█ As an initial matter, Ramm must demonstrate her standing to challenge the ordinance on vagueness grounds. *See State v. Farmer*, 116 Wn.2d 414, 420, 805 P.2d 200, 812 P.2d 858 (1991). Because Ramm cannot make a facial vagueness challenge, she must establish her standing by demonstrating that the ordinance is vague as to her own conduct. *See Farmer*, at 420; *Douglass*, at 182. The record indicates that, at the time the animal control officers visited Ramm's premises in October 1990, she had at least four cats which remained outside all or part of the time.[2] Her

---

[2]Ramm does not dispute that a city animal control officer found five adult cats in her yard in October 1990, and that a second inspection later that month revealed three cats in her yard and two more visible through her window. Although Ramm never states how many cats she has, it is clear from the enforcement history that she has more than three cats that are both indoor and outdoor animals.

alleged violation of the ordinance is based on these facts. Ramm was not cited for keeping four or more exclusively indoor cats, and we therefore decline her invitation to decide whether the ordinance would be vague if applied under such circumstances. Ramm makes no argument that the ordinance is vague as applied to a landowner such as herself who has four or more cats that are both indoor and outdoor animals. Therefore, we conclude that Ramm has no standing to bring a vagueness challenge. *See State v. Farmer*, 116 Wn.2d at 420.

### SUBSTANTIVE DUE PROCESS

Ramm argues that the ordinance violates substantive due process because it is an unreasonable, arbitrary intermeddling with private ownership under the guise of health, safety, and general welfare. She contends that the ordinance lacks a legitimate purpose, is unreasonable, and is unduly oppressive. Finally, she argues that the ordinance's ends can be achieved by more narrow means.

██ ██ The ownership of dogs and cats is generally subject to regulation under a municipality's police power. *See American Dog Owners*, 113 Wn.2d at 217 (dogs subject to police power); *Gates v. Sanford*, 566 So. 2d 47, 49 (Fla. Dist. Ct. App. 1990) (regulation of animals has a longstanding history of constitutionality); Annot., *Law as to Cats*, 73 A.L.R.2d 1032, 1042 (1960) (property in dogs and cats is but a qualified property and property rights of owner of animal are subject to police power of state). However, an exercise of the police power is subject to judicial review and must pass the test of reasonableness. *Granat v. Keasler*, 99 Wn.2d 564, 568, 663 P.2d 830, *cert. denied*, 464 U.S. 1018, 78 L. Ed. 2d 723, 104 S. Ct. 549 (1983).

In *Presbytery of Seattle v. King Cy.*, 114 Wn.2d 320, 787 P.2d 907, *cert. denied*, 498 U.S. 911, 112 L. Ed. 2d 238, 111 S. Ct. 284 (1990), the court provided the following test for whether an exercise of the police power has exceeded constitutional limits in violation of due process:

> (1) whether the regulation is aimed at achieving a legitimate public purpose; (2) whether it uses means that are reasonably

necessary to achieve that purpose; and (3) whether it is unduly oppressive on the landowner. "In other words, 1) there must be a public problem or 'evil,' 2) the regulation must tend to solve this problem, and 3) the regulation must not be 'unduly oppressive' upon the person regulated." The third inquiry will usually be the difficult and determinative one.

(Footnotes and citations omitted.) *Presbytery*, at 330-31.

The court in *Presbytery* indicated that even if a regulation protects the public from harm (*i.e.*, promotes health, safety or welfare) and does not deny the owner a fundamental attribute of ownership (such as right to possess, exclude others from, and transfer ownership), it still must withstand the due process test of reasonableness listed above. *Presbytery*, at 330.

Ramm correctly notes that the stated purpose of the small animal ordinance is to "limit the impact that domestic animals will have on neighboring property." Director's Rule 32-82 (DR 32-82).[3] She then contends that this "purpose" is unclear, conclusory and without substance. We disagree.

■ An overabundance of animals in a residential area may adversely impact property and citizens alike. *See Gates*, 566 So. 2d at 49. Cats may fight and create disturbances, contaminate property with feces, get into garbage, scratch fences or other property, walk on cars, spread disease, and cause roadway hazards. Therefore, regulating the number of cats has a legitimate public purpose.

The ordinance is also reasonably related to achieving its purpose. It applies to certain animals — such as dogs, cats and rabbits — that are customarily kept outside all or part of the time and thus can impact neighboring property. Limiting landowners to three such animals helps to fulfill the purpose of minimizing impact on nearby property.

■ ■ Ramm also argues that the ordinance fails the third prong of *Presbytery* because it is unduly oppressive. In examining whether an ordinance is unduly oppressive, the court should consider the nature of the harm sought to be avoided, the availability of less drastic measures, and the

---

[3]DR 32-82 is a "code interpretation" that was requested by the DCLU in 1982 and defines the "small animals" regulated by SMC 23.44.048(A).

economic loss suffered by the property owner. *Presbytery*, at 331. At the outset, Ramm acknowledges that her argument at trial was limited to whether the ordinance was unduly oppressive on its face. Because she made no argument at trial that the ordinance was unduly oppressive as applied to her situation, we do not consider this argument on appeal. *See R/L Assocs. v. Seattle*, 113 Wn.2d 402, 412, 780 P.2d 838 (1989).

We do not view the ordinance as unduly oppressive on its face. The nature of the harm sought to be avoided (adverse impacts on adjoining property) is a legitimate and substantial concern. Although less drastic measures conceivably are available, such as keeping all animals on a leash while outside, *see* SMC 9.25.084 (the "leash law") , there may well be difficulties in the enforcement of such alternatives. The small animal ordinance provides an additional means of ensuring that an overabundance of small animals does not adversely impact property.

Ramm relies on *Smith v. Steinrauf*, 140 Kan. 407, 36 P.2d 995 (1934), a case where the court invalidated a city ordinance that limited landowners to five cats per residence. The *Steinrauf* court believed that the limit of five was an arbitrary one. The court further found the ordinance void, as it made no distinction between conditions and consequences of keeping cats in one home as compared to another. Most importantly, the court recognized that an owner had a complete and absolute property interest in cats. *Steinrauf*, at 411.

This state does not recognize an absolute property interest in dogs, *see American Dog Owners*, at 217, and we are aware of no Washington authority recognizing such an interest in cats. As the *Steinrauf* holding is premised on the recognition of such an absolute right, we decline to adopt its reasoning.

To conclude, we reject Ramm's substantive due process claim. The ordinance in this case is aimed at a legitimate public purpose, and the means used are reasonably necessary to achieve that purpose. Further, Ramm has not demonstrated that the ordinance is unduly oppressive on its face.

RIGHT TO PRIVACY

Ramm contends that the ordinance violates her fundamental right to privacy in her home. She argues that the home is a protected sanctuary, and that the language of the Washington State Constitution guarantees privacy in the home. She argues that the state constitution affords broader rights than the fourth amendment to the federal constitution. Finally, she argues that Washington case law recognizes the right to privacy.

■ The United States Supreme Court has identified two types of interests protected by the right to privacy: the right to autonomous decisionmaking and the right to nondisclosure of intimate personal information, or confidentiality. *O'Hartigan v. Department of Personnel*, 118 Wn.2d 111, 117, 821 P.2d 44 (1991) (citing *Whalen v. Roe*, 429 U.S. 589, 599-600, 51 L. Ed. 2d 64, 97 S. Ct. 869 (1977)).

The interest in autonomy is recognized as a fundamental right and is accorded the utmost constitutional protection. *O'Hartigan*, at 117. This right involves issues related to marriage, procreation, family relationships, child rearing and education. *O'Hartigan*, at 117. Government action which infringes on this right is given strict scrutiny and the State must identify a compelling governmental interest for such action to be justified. The interest in confidentiality, or nondisclosure of personal information, has not been recognized by Washington courts as a fundamental right requiring the utmost protection. *O'Hartigan*, at 117.

Ramm has no confidentiality interest at stake in this case. Her claim, if any, is that her autonomy interests have been violated by the ordinance. Her contention is that the ordinance, by restricting her ownership of indoor cats, violates the privacy of her home. We disagree.

■ The constitutional right of privacy protects cohabitation choices only insofar as family members are involved. *See Bedford v. Sugarman*, 112 Wn.2d 500, 515, 772 P.2d 486 (1989). As noted in *Bedford*, the United States Supreme Court has not interpreted the federal right of privacy as affording general protection to an individual's choice of

unrelated household companions. *See Bedford*, at 515.[4] If the federal right of privacy is not violated by restrictions against two unrelated persons living together, it is certainly not violated by restrictions against a person living with small animals. Indeed, as the courts of this state have recognized, ownership in dogs, and presumably in other small animals, is of an imperfect or qualified nature. *American Dog Owners*, 113 Wn.2d at 217.

Ramm's next argument is that the right of privacy under the state constitution is more extensive than under the federal constitution. It is well-settled law that Const. art. 1, § 7 provides greater protection than does the Fourth Amendment.[5] *State v. McFadden*, 63 Wn. App. 441, 446, 820 P.2d 53 (1991), *review denied*, 119 Wn.2d 1002 (1992). *See also State v. Boland*, 115 Wn.2d 571, 578, 800 P.2d 1112 (1990) (holding that warrantless search of person's garbage unreasonably intruded into "private affairs" under Const. art. 1, § 7). However, this greater protection generally exists only in the search and seizure area. *Bedford v. Sugarman*, 112 Wn.2d 500, 772 P.2d 486 (1989).

The question Ramm raises here is whether the Washington Constitution affords greater protection of a person's privacy rights *outside* of the search and seizure realm. Our Supreme Court has held that the following six nonexclusive factors must be examined in order to determine whether Const. art. 1, § 7 provides greater protection of a defendant's privacy interests than its federal counterpart:

---

[4]As authority for this proposition, the *Bedford* court cited *Belle Terre v. Boraas*, 416 U.S. 1, 39 L. Ed. 2d 797, 94 S. Ct. 1536 (1974) and *Moore v. East Cleveland*, 431 U.S. 494, 52 L. Ed. 2d 531, 97 S. Ct. 1932 (1977).

[5]Const. art. 1, § 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

U.S. Const. amend. 4 provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

> (1) the textual language; (2) differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern.

*State v. Boland*, 115 Wn.2d at 575 (quoting *State v. Gunwall*, 106 Wn.2d 54, 58, 720 P.2d 808, 76 A.L.R.4th 517 (1986)). In *McFadden*, 63 Wn. App. at 446, this court accepted the *Gunwall* court's analysis of factors (1), (2), (3), and (5) and examined only the fourth and sixth factors as they applied to the case. We will follow the same approach here.

As to preexisting state law, Ramm cites one case as indicating that this state recognizes a right to privacy. *See Voris v. State Human Rights Comm'n*, 41 Wn. App. 283, 704 P.2d 632, *review denied*, 104 Wn.2d 1018 (1985). In *Voris*, a discrimination complaint was lodged against Voris after she refused to rent a room in her private home to a person on the basis of race. *Voris*, at 285. She argued on appeal that her right to choose who she would live with in her home outweighed the State's interest in preventing discrimination. The court disagreed:

> A right fundamentally necessary to the security of liberty and prosperity is the right to privacy. . . . Implicit within the right to privacy is the right to govern one's personal and intimate relationships within the home. The right of privacy, however, is not absolute. . . . Where society has a compelling interest, the Legislature may reasonably regulate this right.

*Voris*, at 290. The court ruled that when one opens one's home to the public by engaging in the rental of rooms, he or she must be deemed to have voluntarily subordinated personal privacy rights to those state interests which can be shown to be compelling, such as the eradication of discrimination. *Voris*, at 290.

The *Voris* court correctly determined that an individual has a right to govern his or her "personal and intimate relationships within the home", *see Voris*, at 290, but we construe this right as extending to family members only. It does not provide support for Ramm's claim that the right encompasses the keeping of animals.

As indicated in *Bedford v. Sugarman,* 112 Wn.2d at 506 n.5, "[t]he few decisions applying article 1, section 7 outside the search and seizure context have attributed to the provision no broader scope than federal constitutional privacy law." As authority for this proposition, the *Bedford* court cited *State v. Maxon,* 110 Wn.2d 564, 571, 756 P.2d 1297 (1988), where the court refused to conclude that the right of privacy under Const. art. 1, § 7 prevented disclosure of confidential communications between parents and children in a criminal investigation, and *Peninsula Counseling Ctr. v. Rahm,* 105 Wn.2d 929, 719 P.2d 926 (1986), where the court upheld a statute requiring disclosure of intimate medical and psychological information of mental health patients to a government agency. The *Rahm* court summarily dismissed the respondent's Const. art. 1, § 7 privacy arguments as unpersuasive.

More recently, in *O'Hartigan,* 118 Wn.2d at 117-18, the court noted that confidentiality had not been recognized as a fundamental right in Washington. The court therefore concluded that, under both state and federal constitutions, a mere rational basis test applied in analyzing a plaintiff's claim of privacy interest in nondisclosure of personal information. *O'Hartigan,* at 118.

We find no preexisting law on which to base an expansive interpretation of Const. art. 1, § 7 outside of the search and seizure setting. Relationships within the home are indeed sacred, but only if they pertain to fundamental autonomy rights. *See O'Hartigan v. Department of Personnel, supra.* The *Voris* decision recognized that privacy rights encompass "personal and intimate relationships within the home." *Voris,* at 290. However, the issue of how many small animals a homeowner may possess in a residential zone does not rise to the level of privacy issues related to marriage, procreation, family relationships, child rearing, and education. *O'Hartigan,* 118 Wn.2d at 117. Our conclusion in this respect is supported by *Bedford v. Sugarman, supra,* which

held that the right to autonomy was not violated by the requirement that one live in a group home and share facilities with others in order to receive benefits under the Alcoholism and Drug Addiction Treatment and Support Act (RCW 74.50). *Bedford*, at 513-16.

As to the sixth *Gunwall* factor, we believe that the matter of a person's general privacy rights outside of the search and seizure realm, and in animals in particular, is of no particular national concern. Rather, it is an issue the states can determine on independent state grounds. *See Gunwall*, 106 Wn.2d at 62.

Our examination of the six *Gunwall* factors persuades us that, on matters not involving search and seizure, Const. art. 1, § 7 affords no greater protection than the minimum protection afforded by the federal constitutional analysis. *See Ford Motor Co. v. Barrett*, 115 Wn.2d 556, 568, 800 P.2d 367 (1990). Therefore, we find it unnecessary to conduct an independent state analysis of Ramm's privacy claim. The ordinance challenged in this case is a police power zoning regulation enacted to further the public health, safety, and welfare. Its means are reasonably related to its purpose. Ramm has failed to demonstrate that enforcement of the ordinance violates her right to privacy.

### OVERBREADTH

Lastly, Ramm contends that the ordinance is overbroad in three ways. First, she argues that the ordinance is an unreasonable use restriction that has no reasonable relationship to public health, safety, etc. Second, she contends that the ordinance violates the right to privacy in the home. Third, she argues that the ordinance infringes upon her right to pursue happiness.

In the free speech context, a law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities. *Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989). However, overbreadth is a concern only where a substantial amount of constitutionally protected

conduct is reached. *Huff*, at 925; *American Dog Owners Ass'n v. Yakima*, 113 Wn.2d 213, 217, 777 P.2d 1046 (1989).

Ramm has not shown that the small animal ordinance embraces a substantial amount of constitutionally protected conduct. Her overbreadth arguments are conclusory and cite no authority. We need not and do not decide here whether the ordinance could be constitutionally applied to a landowner owning exclusively indoor animals.

As we have already determined that the ordinance at issue here does not violate substantive due process, we reject her claim that the ordinance has no reasonable relationship to public health or safety and therefore is overbroad. The same holds true for her overbreadth argument regarding the right of privacy, as we have already rejected her privacy claim. Ramm's argument as to the right to pursue happiness asserts that "[p]eople own pets as part of their pursuit of happiness and limitations on them should have at least a rational basis." Brief of Appellant, at 20. The ordinance here, as previously demonstrated, has a rational basis.

Judgment affirmed.

FORREST and KENNEDY, JJ., concur.

Review denied at 120 Wn.2d 1018 (1992).