[No. 47976-8-I. Division One. September 23, 2002.]

WELLINGTON RIVER HOLLOW, L.L.C., *Appellant*, v. KING COUNTY, ET AL., *Respondents*.

NORTHSHORE SCHOOL DISTRICT NO. 417, *Respondent*, v. WELLINGTON RIVER HOLLOW, L.L.C., *Appellant*, KING COUNTY, *Respondent*.

226

*James J. Klauser* and *Robert C. Rowley*, for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Peter Ramels, Deputy,* and *David J. Lenci* (of *Preston Gates & Ellis, L.L.P.*), for respondents.

APPELWICK, J. — Wellington River Hollow, L.L.C., a real estate developer, appeals $1,398 per unit school impact fees assessed by King County for the benefit of Northshore School District No. 417, which is located partially in King County. Wellington urges this court to reverse the fees because they were incorrectly calculated and because they are not identical to fees imposed by other jurisdictions within Northshore School District.

The statutes and ordinances at issue in this case give jurisdictions within a school district the discretion to impose school impact fees on new developments. That discretion means that the amount of fees for comparable units may be different from one jurisdiction to another. Wellington failed to show this discretionary treatment is unconstitutional. Wellington also failed to demonstrate that its school impact fees were incorrectly calculated or that unusual circumstances rendered the fees unjust. Accordingly, we affirm King County's $1,398 per unit school impact fee assessment.

FACTS

On December 22, 1997, Wellington River Hollow, L.L.C. submitted to King County an application describing a

proposal to construct a 144-unit apartment complex[1] in a portion of Northshore School District No. 417 that is located in unincorporated King County. Northshore School District is located partially in King County, partially in Snohomish County, and partially in incorporated cities.

Based on the 1997 Northshore School District school impact fee schedule, which was in effect at the time of Wellington's initial submission, Wellington's school impact fees were assessed at $1,398 per unit. In March 1999, Wellington was notified that its project had been approved. In April 1999, Wellington wrote a letter to King County disputing the $1,398 per unit school impact fee assessment. Wellington explained that it contacted Northshore School District and "was led to believe that the applicable fee rate would be $387 per unit" based on the 1999 rates, rather than $1,398 per unit based on the 1997 rates. It nonetheless submitted "under protest" a payment of $1,398 per unit. King County Code (KCC) 21A.43.070(B). Wellington sought an adjustment from King County, but that request was denied. KCC 21A.43.070.

Wellington sought review of King County's decision from a Deputy King County Hearing Examiner. Northshore School District intervened in the proceedings in defense of the $1,398 per unit assessment. The deputy hearing examiner reduced Wellington's school impact fee assessment to $668 per unit.

Wellington and Northshore School District appealed the deputy hearing examiner's decision to King County Superior Court under the Land Use Petition Act (LUPA), chapter 36.70C RCW.[2] The superior court reversed the deputy

---

[1] The original proposal was submitted by Wellington's predecessor in interest. Wellington purchased the land and became the successor applicant in 1998.

[2] In the complaint filed in superior court, Wellington also sought a declaratory judgment that the school impact fees were unconstitutional and a monetary judgment. Although the superior court dismissed these claims, Wellington mentions the declaratory judgment for the first time in a footnote in its reply brief. Because "[a]n issue raised and argued for the first time in a reply brief is too late to warrant consideration," we decline to address the trial court's dismissal of the declaratory judgment. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801,

hearing examiner's $668 per unit fee and reinstated the $1,398 per unit fee. Wellington appeals.

## STANDARD OF REVIEW

■ A party seeking relief from a land use decision, including a decision from a county hearing examiner, must file a LUPA petition in superior court. RCW 36.70C.020(1)-.040(1). That party has the burden of showing that the challenged decision violates RCW 36.70C.130(1), which states:

(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

(f) The land use decision violates the constitutional rights of the party seeking relief.

■ On review of a LUPA decision, this court stands in the shoes of the superior court and reviews the hearing examiner's action on the basis of the administrative record. *Wells v. Whatcom County Water Dist. No. 10*, 105 Wn. App. 143, 150, 19 P.3d 453 (2001).[3]

---

809, 828 P.2d 549 (1992). Moreover, Wellington's attorney made it clear during oral argument that Wellington is not raising a facial constitutional challenge to the statutes or ordinances authorizing school impact fees.

[3] Where, as here, the superior court is required to serve in an appellate capacity to an administrative action but issues findings of fact and conclusions of law, this court simply disregards such findings and conclusions as surplusage. *See Van Sant v. City of Everett*, 69 Wn. App. 641, 650-51, 849 P.2d 1276 (1993).

## ANALYSIS

I. Reduction of School Impact Fees

■ ■ Wellington contends that the deputy hearing examiner acted outside his authority or jurisdiction when he reduced Wellington's school impact fees from $1,398 per unit to $668 per unit following the 1997 fee schedule. Rather, Wellington urges this court to reduce its fees to zero. This is a question of law that this court reviews de novo. *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 46, 959 P.2d 1091 (1998).

■ KCC 21A.43.070 sets forth circumstances under which King County is authorized to adjust school impact fees:

> E. Impact fees may be adjusted by the county, at the county's discretion, if one of the following circumstances exist, provided that the discount set forth in the fee formula fails to adjust for the error in the calculation or fails to ameliorate for the unfairness of the fee:
>
> 1. The developer demonstrates that an impact fee assessment was incorrectly calculated; or
>
> 2. Unusual circumstances identified by the developer demonstrate that if the standard impact fee amount was applied to the development, it would be unfair or unjust.

Thus, the deputy hearing examiner, who makes King County's final land use decisions, has the authority and jurisdiction to adjust school impact fees if those fees were incorrectly calculated or if unusual circumstances render the fees unjust. In this case, it has been Wellington's position that its school impact fees were incorrectly calculated and that the fees were unjust based on Northshore School District's representations that the fees would be lower. If, in fact, Wellington's school impact fees were incorrectly calculated or the fees were unjust, KCC 21A.43.070 would authorize the deputy hearing examiner to adjust Wellington's school impact fees. But Wellington points to no authority to support its argument that "may be

adjusted by the county" requires an adjustment equal to zero.

The following sections will address whether Wellington's school impact fees were incorrectly calculated and whether unusual circumstances render the fees unjust based on arguments presented by Wellington.

### A. Were Fees Incorrectly Calculated?

Wellington contends that its school impact fees were incorrectly calculated because (1) the calculation method did not comply with chapter 21A.43 KCC, and (2) the fees were based on the 1997 fee schedule rather than the 1999 fee schedule.

#### 1. KCC 21A.43.030(A)'s Formula

Wellington contends that the $1,398 per unit school impact fees assessed to it did not comply with King County's school impact fees ordinance, chapter 21A.43 KCC. That ordinance requires a school district to calculate a proposed school impact fee schedule in the following manner. First, the school district calculates a student factor, which is the number "derived by a school district to describe how many students of each grade span are expected to be generated by a dwelling unit." KCC 21A.06.1260. Second, it calculates the cost per student. Third, it multiplies the student factor by the cost per student. Fourth, it deducts amounts equal to those received from the State in matching funds for the new facilities and property taxes paid by the new development. And fifth, it reduces the fee by 50 percent.

To calculate the student factor at issue in this case, Northshore School District hired a professional consultant. The consultant concluded that there was insufficient data to calculate Northshore School District's actual student generation rates. He therefore used a composite, which he refers to as an average, of actual student generation rates for new developments constructed in the four school districts within the county for which actual data had been collected. Northshore School District adopted the consult-

ant's calculation method in regular open session as part of its Capital Facilities Plan, which sets forth its planning needs, expected per-student costs, and proposed school impact fee schedules following regulations from jurisdictions located in Northshore School District. That Plan was then adopted by the King County Council. King County, Ordinance 12532, § 10.

Under KCC 21A.43.030(A)'s formula, where "actual student generation rates for new developments constructed over a period of not more than five years prior to the date of the fee calculation . . . is not available in the district, data from adjacent districts, districts with similar demographics, or county-wide averages must be used." Wellington does not dispute Northshore School District's consultant's determination that actual information was not available.[4] The districts from which the actual rates were taken were not adjacent districts, nor did Northshore assert these were demographically similar to Northshore School District. The only remaining basis in the ordinance for an alternate calculation is a county-wide average. Wellington asserts that the composite calculation used by Northshore is not a county-wide average. The age of the data is not at issue.

■ ■ The term "county-wide average" cannot mean literally an average of the data of every district within the county. Such a definition would require data from Northshore to be available before a literal county-wide average could be calculated. But if the actual data were available from Northshore, then the use of a county-wide average is not permitted by the ordinance. We will not read the language in a manner to render it meaningless. "It is well established that a statute is to be interpreted so as to give effect to its purpose while avoiding absurd or pointless

---

[4] Wellington may have disputed the availability of actual information in the proceeding before the hearing examiner. The conclusions reached by the hearing examiner make clear that neither the determination that actual information was unavailable nor the stated basis for such a determination were beyond the discretion left to the district in the ordinance. Wellington did not raise the issue in this appeal, but did so in its motion to reconsider. We agree with the hearing examiner.

consequences." *City of Pasco v. Napier*, 109 Wn.2d 769, 773, 755 P.2d 170 (1988). In addition, "[i]t is the duty of this court to construe statutes so as to avoid rendering meaningless any word or provision." *State v. Contreras*, 124 Wn.2d 741, 747, 880 P.2d 1000 (1994).

Similarly, some school districts are categorically exempt from the fee program. Eleven of the twenty districts within the county are subject to the ordinance. A county-wide average could at best include only the 10 districts, excluding Northshore. Data can be averaged only if it exists. Current actual information existed in 4 of the 10 districts. That was all the data which could be averaged and that data was used in the average adopted by Northshore.

■ An average requires at least two sets of data. A county-wide average under this ordinance could be based on the data between 2 and 10 districts. The method used by Northshore averaged the available data from each school district within the county which had actual data. This method satisfied the concept of county-wide average as that term is used in the ordinance. We see nothing in the statute that is contravened by this usage of the term.

Thus, Wellington failed to demonstrate that the student generation rate was incorrectly calculated under KCC 21A.43.030(A)'s formula.

### 2. 1997 Rates

Wellington contends that its school impact fees were incorrectly calculated using the 1997 fee schedule. Rather, it maintains that the 1999 rates apply.

Wellington concedes that the initial application for the project was submitted to King County on December 22, 1997, and that KCC 21A.43.050 controls this issue. That provision states:

> D. For existing lots . . . application for single family and multifamily residential building permits . . . the total amount of the impact fees shall be assessed and collected from the applicant when the building permit is issued, using the impact fee schedules in effect at the time of permit application.

KCC 21A.43.050. King County's "project processing" computer printout lists the date of application for Wellington's project as December 22, 1997, and the type of project as "multifamily building project." The "project comments" for the project indicate that "school impact fees have been assessed."

Wellington argues that the 1999 fee schedule must be used to calculate its school impact fees because 1999 is the year its application was approved and the year its site plan became final. It also argues that this application was a preliminary application and not a building permit application. Relying on *New Castle Investments v. City of LaCenter*, 98 Wn. App. 224, 989 P.2d 569 (1999), *review denied*, 140 Wn.2d 1019 (2000), Wellington argues that the proper year to quantify an impact fee is the year nearest to that in which the impact was actually felt.

■ *New Castle*, however, does not support Wellington's argument. At issue in *New Castle* was a City of LaCenter Code ordinance imposing traffic impact fees that Division Two of this court needed to interpret to determine which fee schedules to rely upon. *New Castle*, 98 Wn. App. at 228. By contrast, the King County ordinance at issue in this case expressly provides that school impact fees be imposed based on "the impact fee schedules in effect at the time of permit application." KCC 21A.43.050(D). Because the ordinance needs no interpretation regarding which fee schedules apply, the analysis in *New Castle* is not applicable. We reject Wellington's arguments that are contrary to the plain language of the ordinance. Rather, we conclude that Wellington's school impact fees should be calculated based on the fee schedules in effect at the time of building permit application.

Because neither the "project processing" computer printout nor KCC 21A.43.050(D) draws a distinction between types of development applications, we conclude that the December 22, 1997 application is a "building permit application" for the purposes of KCC 21A.43.050(D). Accordingly, we conclude that Wellington failed to demonstrate that its

school fee assessment was incorrectly calculated based on the 1997 fee schedules, which were in effect on December 22, 1997, when the initial application for Wellington's project was submitted.

### B. Do Unusual Circumstances Render the Fees Unjust?

Wellington contends that unusual circumstances render its school impact fee assessment unjust (1) in light of representations made by Northshore School District that Wellington's fees would be lower and (2) because they violate RCW 82.02.050's requirements that impact fees be reasonably related to the development and used for system improvements that will reasonably benefit the development.

#### 1. Reliance on Northshore School District's Representations

■■■ Wellington argues that the school impact fees were unjust because Northshore School District made representations that Wellington's school impact fees would be lower than they were. Northshore School District stated correctly the 1999 fees in effect for new developments at the time of inquiry. Northshore believed the inquiry was a new development. But, the development was not new. It dated to 1997, and the 1997 fees applied to this development.

Northshore School District's school impact fee schedule is published in the King County Code at KCC 27.44.010. Also published in the King County Code is an explanation that "the impact fee schedules in effect at the time of permit application" are to be used. KCC 21A.43.050(D). Any opposing representations that may have been made to Wellington do not relieve Wellington of its obligation to pay school impact fees based on the published schedule. *See State v. Leavitt*, 107 Wn. App. 361, 369, 27 P.3d 622 (2001) ("ignorance of the law is no excuse"). Wellington has no basis in law to rely on such representations.

#### 2. Reasonably Related and Reasonably Benefit

Wellington contends that the school impact fees in this case are unjust because they are not reasonably related to its

development and because the fees will fund system improvements that will not reasonably benefit its development in violation of RCW 82.02.050(3) and RCW 82.02.060(1).

RCW 82.02.050(3) provides that local governments may assess impact fees that:

(a) Shall only be imposed for system improvements that are reasonably related to the new development;

(b) Shall not exceed a proportionate share of the costs of system improvements that are reasonably related to the new development; and

(c) Shall be used for system improvements that will reasonably benefit the new development.

And RCW 82.02.060(1)(a) requires impact fees to incorporate "[t]he cost of public facilities necessitated by new development."

Northshore School District's 1996 Capital Facilities Plan, on which the 1997 school impact fees were based, is based on projected student enrollment growth. It contains planned improvement to classrooms throughout Northshore School District, including the addition of 10 classrooms at a high school located near Wellington (Bothell High School) and the construction of a new junior high school located far from Wellington (Timbercrest Junior High School). Although students are assigned to attend certain schools, Northshore School District may grant a student permission to attend a school located outside of an assigned attendance area.

As an initial matter, Growth Management Act impact fees need not be spent on infrastructure that would specifically benefit a particular development, but instead need only provide a general benefit to the entire school district. *New Castle*, 98 Wn. App. at 236. In this case, the 1997 school impact fees—including Wellington's fees—were collected to fund classroom improvements throughout Northshore School District. Although the fees have not yet been spent, Wellington alleges that the students it gener-

ates will not directly benefit from the improvements. But a direct benefit is not required. The school impact fees are to ensure adequate facilities for the school district as new students enroll. Northshore School District will benefit from the infrastructure improvements set forth in the 1996 Capital Facilities Plan, and the students from Wellington's development will have adequate facilities to be able to attend. If Wellington's fees are not expended or encumbered for a permissible use within six years, it may request a refund. KCC 21A.43.090(E).

In sum, Wellington failed to demonstrate that its school impact fees are not reasonably related to its development or that they will fund system improvements that will not reasonably benefit its development in violation of RCW 82.02.050(3) or RCW 82.02.060(1).[5] Thus, Wellington failed to demonstrate an unusual circumstance that renders the $1,398 per unit school impact fees unfair or unjust.

II. Violation of Constitutional Rights

Wellington contends that the $1,398 per unit school impact fee assessment violates its constitutional rights. RCW 36.70C.130(1)(f). It has the burden of showing such a violation. RCW 36.70C.130(1)(f); *Ramm v. City of Seattle*, 66 Wn. App. 15, 19, 830 P.2d 395 (1992).

RCW 82.02.060(6) requires school impact fee ordinances to "establish one or more reasonable service areas within which it shall calculate and impose impact fees for various land use categories per unit of development." The statute defines service area as "a geographic area defined by a county, city, town, or intergovernmental agreement in which a defined set of public facilities provide service to development within the area." RCW 82.02.090(8). It also requires

---

[5] Wellington does not allege that the school impact fees assessed by King County in this case, which were significantly less than Northshore School District's expected per-student costs, exceeded a proportionate share of the costs of system improvements under RCW 82.02.050(3)(b). Indeed, RCW 82.02.050(1)(c) and KCC 21A.43.010(C) prohibit school impact fees from being duplicative for the same impact and Wellington does not allege that those provisions were violated in this case.

that service areas "be designated on the basis of sound planning or engineering principles." RCW 82.02.090(8).

King County designated all of the Northshore School District as the reasonable service area for the calculation of school impact fees charged for development within the portion of the school district also within King County. RCW 82.02.060(6); KCC 21A.43.020, 27.44.010. Although Northshore School District is located partially in King County, partially in Snohomish County, and partially in incorporated cities, King County has not entered into an agreement with the other jurisdictions to establish a consistent amount of school impact fees to charge throughout Northshore School District. Indeed, there is no requirement under statute or ordinance to enter into such an agreement. As a result, jurisdictions located in Northshore School District were not obligated to impose a uniform amount of school impact fees to new development within Northshore School District.

 Wellington argues that King County violated its constitutional rights by imposing school impact fees that are not identical to school impact fees imposed by other jurisdictions within the Northshore School District. In Wellington's opinion, King County was required to assure uniformity of taxation by entering into agreements with all the local jurisdictions in Northshore School District. It is Wellington's position that the varied school impact fees that were imposed throughout the Northshore School District violated its rights under article VII, section 9 of the Washington Constitution.[6] Article VII, section 9 of the Washington Constitution states that taxes collected by municipal corporations "shall be uniform in respect to persons and property within the jurisdiction of the body levying the same." It is well established that the uniformity requirements set forth in article VII, section 9 of the Washington Constitution apply only to property taxes and not to excise taxes. *Dean v. Lehman*, 143 Wn.2d 12, 25-26, 18 P.2d 523

---

[6] Wellington did not raise a federal equal protection challenge to the school impact fee statutes or ordinances.

(2001). Because Wellington acknowledges that "RCW 82.02 taxes are not property taxes," its constitutional uniformity argument must fail.

█ █ Wellington also argues that the varied school impact fees imposed throughout the Northshore School District violated its rights under article XI, section 12 of the Washington Constitution. That section limits the legislature's authority to collect taxes only "for county, city, town, or other municipal purposes." WASH. CONST. art. XI, § 12. Taxes[7] to support public education do not violate article XI, section 12 of the Washington Constitution because "education has both a state and local purpose." *Intermediate Sch. Dist. No. 105 v. Yakima County*, 81 Wn.2d 443, 447, 503 P.2d 104 (1972) (citing *Newman v. Schlarb*, 184 Wash. 147, 154, 50 P.2d 36 (1935)).

Thus, Wellington did not satisfy its burden of showing that the $1,398 per unit school impact fee assessment violated its constitutional rights.

█ We recognize Wellington's concerns about the apparent unfairness of varied amounts of school impact fees being imposed on new developments located in different jurisdictions within the same school district. It may indeed be fairer and even more effective in securing adequate funds for school districts if agreements existed between jurisdictions within a school district to establish a uniform amount of school impact fees to be charged. But the legislature left the decisions to the discretion of the local jurisdictions. Each may decide whether to assess a fee. In this case, Northshore School District adopted a Capital

---

[7] Both Wellington and Northshore School District characterize the school impact fees at issue in this case as excise taxes, rather than regulatory fees. Although we recognize that King County took a contrary position in the proceedings below, neither the hearing examiner nor the trial court decided the issue under the facts presented in this case, the result would be the same regardless of whether the fees are analyzed as excise taxes or regulatory fees. It is therefore not necessary for this court to decide the issue. Rather, for purposes of this opinion, we assume without deciding that the school impact fees are excise taxes. *See New Castle*, 98 Wn. App. 224 (concluding that transportation impact fees have characteristics that distinguish them from regulations, but stopping short of holding that they are taxes).

Facilities Plan that sets forth its planning needs, expected per-student costs, and proposed school impact fee schedules following regulations from jurisdictions located in Northshore School District. Based on this raw data, King County exercised its discretion to assess school impact fees.

King County's decision to impose school impact fees of $1,398 per unit on Wellington complied with the relevant statutes and ordinances. The fact that other jurisdictions within Northshore School District used that discretion differently does not render King County's fees invalid.

In sum, Wellington failed to demonstrate that its school impact fees were incorrectly calculated or that unusual circumstances rendered the fees unjust. Therefore, we conclude that the deputy hearing examiner was not authorized to adjust Wellington's $1,398 per unit school impact fees. *See* KCC 21A.43.070(E). Moreover, Wellington did not show a constitutional violation. Wellington has failed to establish a basis under LUPA to prevail. Accordingly, we affirm the superior court's reversal of the deputy hearing examiner's ruling.

III. Attorney Fees

Northshore School District requests attorney fees on appeal as the prevailing party under RCW 4.84.370. RCW 4.84.370 governs fee awards for appeals of land use decisions. The statute provides that "reasonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals" if the prevailing party on appeal was also the prevailing party (a) before the local government and (b) in all prior judicial proceedings in a local government's decision to issue, condition, or deny a development permit. RCW 4.84.370(1). Because Northshore School District is the prevailing party in this case, we award its attorney fees on

following its compliance with RAP 18.1.

Affirmed.

BECKER, C.J., concurs.

GROSSE, J. (concurring) — I concur in the result but write separately to express my dismay at the inequity and irrationality of an impact fee scheme that does not require uniformity among and between the various permitting entities, even with regard to the basic decision of whether to impose such a fee. I have no doubt whatsoever that substantially similar dwelling units will vary in cost within the Northshore School District based solely on whether they are located in King County where the fee is imposed, or in a city in King County that does not impose the fee. Worse, these substantially similar dwelling units could be located across the street from one another. However, if this inequity offends the Constitution or is otherwise illegal, the appellants have not adequately raised or argued the issue.

Review denied at 149 Wn.2d 1014 (2003).